GEORGE L. PSAK*
ROBERT A. MCLARTY, JR.
ELLEN L. YANG
MICHAEL J. FRANK
RICHARD J. ISOLDE Δ

# PSAK & ASSOCIATES
## GEORGE L. PSAK, ESQ., LLC
### ATTORNEYS AT LAW

———

127 UNION AVENUE
MIDDLESEX, NEW JERSEY 08846-1000
(732) 560-0100
FAX (732) 560-9272
EMAIL: GPSAK@PSAKLAW.COM
WWW.PSAKLAW.COM



*CERTIFIED BY THE SUPREME COURT
OF NEW JERSEY AS A
CIVIL TRIAL ATTORNEY
ΔNJ AND NY BARS

June 26, 2009

Magistrate Judge Patty Shwartz
United States District Court - District of New Jersey
Frank R. Lautenberg U.S.P.O.& Ct.Hse. Bldg.-Rm477
50 Walnut Street-P. O. Box 999
Newark, New Jersey     07101

> **Re:  *Wei Ngai, Enid Tran & Chau Ngai vs. Gap, Inc.***
> ***Our File #:    D  153-44720  GLP***
> ***Docket #: 2:07-cv-05653***

Dear Magistrate Judge Shwartz:

The purpose of this letter is to respond to Ms. Arnold's June 23, 2009 letter requesting "any and/or all documents submitted by Defendant in support of the Motion for Withdrawal of Appearance for Scott Feringa" that "fall outside of the Attorney-Client Privilege." It is the position of Gap, Inc. that all communications between Mr. Feringa and Fiona Williams are privileged and should not be disclosed or released. They had no bearing on the testimony of the witness, they are irrelevant to the merits of this case and should not be raised again going forward. A copy of the transcript of Fiona Williams is attached and includes the rulings of Judge Shwartz. It will place all of this in context. Once reviewed and resolved, the defendant requests a ruling precluding plaintiff from raising this issue at trial.

In her letter, Ms. Arnold asserted that under <u>George v. Siemens Industrial Automation, Inc .,</u> 182 F.R.D. 134, 142 (D.N.J.1998) she may view non-privileged documents. In <u>George</u>, the court held that an attorney certification was protected by the attorney client privilege. The only communication that was

disclosed was a solitary paragraph of a twenty-one paragraph certification of another attorney. It was disclosed because it did not contain privileged information and contained information about the plaintiff's state of mind which was an issue of the case. At the time, it was a late stage of the litigation and the party seeking the information would have suffered an undue hardship in attempting to obtain the information from other sources.

Here, _George_ does not require disclosure of the certification and/or documents submitted in support of the motion to the adverse party. See R.P.C. 1.6. The certification and documents submitted in support of the motion are protected by the attorney-client privilege and work product doctrines. See F.R.E. 501. I respectfully request that the court examine the privileged material in camera and I am confident that the Court will see that the "crime fraud" and "at issue" exceptions do not apply. My client did not make a communication with Mr. Feringa in furtherance of a crime or fraud. Furthermore, these documents do not refer to my client's state of mind or any other issue relevant to this matter. Therefore, the "crime fraud" and "at issue" exceptions do not apply and the privileges bar disclosure of the information.

Very truly yours,

George L. Psak

GLP/d
cc:  Scott D. Feringa, Esq., Sullivan, Ward, Asher & Patton
     Rosemarie Arnold, Esq., Law Offices of Rosemarie Arnold
     Fiona Williams, The Gap, Inc.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CIVIL ACTION NO.  2:07-cv-5653

WEI NGAI, an infant by her
Guardian Ad Litem, ENID TRAN,
EDID TRAN, Individually, and
CHAU NGAI, Individually,
    Plaintiffs,

                                    DEPOSITION OF
                                  FIONA  WILLIAMS

    vs.

OLD NAVY, a subsidiary of GAP,
Inc., and/or "ABC CORP 1
through 10", and/or DEF CORP 1
through 10", (the last two
being fictitious
designations).
    Defendants.

---

        T R A N S C R I P T of the stenographic

notes of THERESA L. TIERNAN, a Certified Shorthand

Reporter and Notary Public of the State of New Jersey,

taken at the offices of ROSEMARIE ARNOLD, 1386 PALISADE

AVENUE, FORT LEE, NEW JERSEY, on THURSDAY, JUNE 4,

2009, commencing at 2:36 p.m. - WITNESS TELECONFERENCE

TAKING PLACE AT: 915 HIGHPOINTE DRIVE, ROOSEVELT,

CALIFORNIA - SCOTT FERINGA, ESQ., TELECONFERENCE AT

30800 TELEGRAPH, SUITE 2950, SOUTHFIELD, MICHIGAN

48075.

---

THERESA L. CARIDDI-TIERNAN
CERTIFIED COURT REPORTERS
146 LINDBERGH PARKWAY
WALDWICK, NEW JERSEY 07463
(201) 493-7474
TLC102462@AOL.COM

A P P E A R A N C E S:

       LAW OFFICES OF ROSEMARIE ARNOLD
       BY:  ROSEMARIE ARNOLD, ESQ.,
       1386 PALISADE AVENUE
       FORT LEE, NEW JERSEY
       BREEN@ROSEMARIEARNOLD.COM
       Attorneys for the Plaintiffs.


       SULLIVAN, WARD, ASHER & PATTON, P.C.,
       BY:  SCOTT D. FERINGA, ESQ.,
       1000 MACCABEES CENTER
       25800 NORTHWESTERN HIGHWAY
       SOUTHFIELD, MI  48075-1000
       SFERINGA@SWAPPC.COM
       Attorneys for Old Navy.


       PSAK, GRAZIANO, PIASECKI & WHITELAW, ESQ.,
       BY:  GEORGE L. PSAK, ESQ.,
       127 UNION AVNEUE
       MIDDLESEX, NEW JERSEY  08846
       GPSAK@PSAKLAW.COM
       Attorneys for Old Navy.

I N D E X

| WITNESS | DIR | CRS | RED | REC |
|---------|-----|-----|-----|-----|

FIONA WILLIAMS

BY:  MS. ARNOLD          4

BY:  MR. FERINGA               30

E X H I B I T S

| NUMBER | DESCRIPTION | IDENT |
|--------|-------------|-------|
| P. WILLIAMS-1 | DOCUMENT REQUEST & RESPONSE | 4 |
| P. WILLIAMS-2 | LETTER | 26 |

WILLIAMS - DIRECT - ARNOLD

1                    (Exhibit received and marked P. WILLIAMS-1

2                    for identification.)

3        F I O N A    W I L L I A M S, 3900 ATHERTON ROAD,

4        ROCKLAND, CALIFORNIA, being first duly sworn by the

5        Notary, testifies as follows:

6        DIRECT EXAMINATION BY MS. ARNOLD:

7                    Q.    Fiona, good morning, I deposed you --

8        A.    Good morning.

9                    Q.    I'm sorry.  I deposed you once before

10       and I gave you instructions with respect to the

11       deposition.

12                   Do you need me to repeat them?

13       A.    No.

14                   Q.    Okay.  Do you know who Denise Campbell

15       is?

16       A.    Yes.

17                   Q.    Could you tell me for the record who

18       she is?

19       A.    Could I tell you who she is?

20                   Q.    Yes.

21       A.    She's an attorney.  She's an attorney that

22       represents the Gap.

23                   Q.    How long have you known her?

24       A.    I have known her about 11 or 12 years.

25                   Q.    Do you know her in her capacity as a

1    person who represented the Gap or some other

2    capacity?

3    A.    Purely professional, as representing the Gap.

4         Q.    Do you know that she was deposed in

5    this case on Tuesday?

6    A.    Yes, I do.

7         Q.    Are you familiar with what her

8    testimony was?

9    A.    I reviewed it, yes.

10        Q.    Okay.  You reviewed a transcript?

11   A.    Yes.

12        Q.    Have you ever had any conversations

13   with Denise Campbell concerning the faceouts

14   involved in this accident?

15   A.    Yes.

16        Q.    Can you tell me approximately how many

17   conversations?

18   A.    I couldn't tell you how many conversations

19   I've had.

20        Q.    Can you approximate, Fiona?

21   A.    I know that I had at least one conversation

22   with her and probably -- maybe a couple of others,

23   but I don't know exactly.

24        Q.    Do you have a recollection of any other

25   conversations you had with her?

WILLIAMS - DIRECT - ARNOLD

1    A.    I have a recollection of an initial

2    conversation I had with her in regards to hiring

3    her.

4          Q.    Hiring her in this case?

5    A.    Yes.

6          Q.    Did you discuss the faceouts during

7    that conversation?

8    A.    I don't remember.

9          Q.    Did you discuss the T-stands in that

10   conversation?

11   A.    I don't remember.  I discussed the incident,

12   I know that, so it probably came up in the

13   conversation.

14         Q.    Do you have any recollection of any

15   conversations that you had with Denise about either

16   the T-stands or the faceouts?

17               MR. PSAK:  Object to the form.  You can

18   answer it.

19               MR. FERINGA:  Just, also, excuse me,

20   without attempting to interrupt any longer, a number

21   of these were gone into at the previous deposition

22   Miss Arnold, so this was gone over extensively

23   actually in the last deposition.

24               Were you going to go through the same

25   thing?

1             MS. ARNOLD: Well, actually, the

2     questions that I asked her at her first deposition

3     were general questions about conversations she had.

4     This was actually my last question, Scott, about

5     conversations with Denise on specifically the

6     faceouts and the T-stands. I just want to know what

7     her recollection is in that regard.

8             MR. FERINGA: I think you did ask

9     specific conversations about T-stands at various

10    points in the other deposition and I will certainly

11    give you some latitude here, because the Court has

12    allowed this, but I want to indicate that there's

13    extensive testimony about this already on the

14    record.

15            MS. ARNOLD: Can she answer the

16    question?

17            MR. FERINGA: Yes, she can, but she

18    probably needs it read back because I've now

19    interrupted her and clearly probably altered the

20    train of thought. I apologize.

21            MS. ARNOLD: Would you please?

22    A.    Yes, could you read that back, please?

23            (Stenographer reads back as requested.)

24    A.    I recall it being a part of a conversation,

25    yes.

WILLIAMS - DIRECT - ARNOLD

1      Q.    Do you have a specific recollection of

2    what was said regarding the T-stands or the faceouts

3    in that conversation that you recall?

4    A.    We discussed removing the T-stands and there

5    was -- I think there was discussion about the

6    faceouts as well.

7      Q.    When did this conversation take place?

8    A.    I don't know the exact date.

9      Q.    Do you have a document which would

10   reflect when that conversation took place?

11   A.    No.

12     Q.    Did you take notes during that

13   conversation?

14   A.    Yes.

15     Q.    Do you have those?

16   A.    You're asking me if I have a document with

17   me, correct?

18     Q.    No.  I'm asking you if there is a

19   document that exists which would indicate the date

20   of that conversation.

21   A.    There's probably a documentation in a file

22   note, yes.

23     Q.    And where would that be?

24   A.    In our claims system.

25     Q.    And is this the conversation that you

1   told me about with Denise where you first hired her?

2   A.    Yes.

3        Q.    Can you tell me to the best of your

4   recollection exactly what you said to her about the

5   T-stands and the faceouts during that conversation?

6   A.    I don't remember exactly what I said to her

7   about it, we didn't know at that time what had

8   happened.   It was a very general conversation.

9        Q.    Were there any other conversations that

10  you had with Denise specifically about the T-stands

11  or the faceouts?

12  A.    Yes, we had communications about that, yes.

13       Q.    Can you tell me your recollection of

14  the next conversation you had with her?

15  A.    I believe she had gone to the store and

16  spoken with people at the store and it was my

17  understanding that they had preserved the faceouts

18  and I think the T-stand came later.

19       Q.    When did that conversation take place?

20  A.    I don't know.

21       Q.    Is there a writing?

22  A.    I don't remember.

23       Q.    Is there a writing, Fiona, which would

24  tell me what date on which that conversation took

25  place?

WILLIAMS - DIRECT - ARNOLD

1       A.    It's probably documented in the file, yes.

2             Q.    Did you take notes during that

3       conversation?

4       A.    Yes.

5             Q.    Did you take those notes

6       contemporaneously with that conversation or did you

7       write them after the conversation?

8       A.    I usually write notes while I'm having a

9       conversation, but I don't remember having a

10      conversation that I had with Denise.  I know that I

11      had one initial phone call with her.

12            Q.    Did you ever meet her in person about

13      this case?

14      A.    No, I did not.

15            Q.    Okay.  The conversation that you --

16      strike that.

17            Do you know who Nada Batres is?

18      A.    Yes.

19            Q.    Tell me who she is.

20      A.    The store manager.

21            Q.    She's a store manager now.

22            Is that right?

23      A.    I don't know what her title is now.

24            Q.    Was she the store manager?

25      A.    But I understand her to be --

1        Q.    Sorry I interrupted because there was a

2   delay.  I thought you were finished.

3               You thought what?

4        A.    I understand that -- I understand that she is

5   management level in the store.

6        Q.    Was she the logistics manager of the

7   store on the date of the accident?

8        A.    I don't know what she was on the date of the

9   accident.

10       Q.    Did you ever talk to her about the

11  T-stands or the faceouts in connection with this

12  case?

13       A.    No, I did not.

14       Q.    Do you know that she was deposed in

15  this case?

16       A.    Yes, I do.

17       Q.    Did you review her deposition

18  testimony?

19       A.    Before my first deposition I did, yes.

20       Q.    And what's your understanding of her

21  testimony with regard to the faceouts in this case?

22               MR. FERINGA:  I object.

23               MR. PSAK:  I object to the form.

24       A.    My understanding is -- I'm sorry.

25               MR. PSAK:  You could answer it.  Go

1    ahead.

2    A.    My understanding, if I remember from her

3    testimony, is that she removed the faceouts from the

4    T-stand.

5         Q.    What's your understanding of what she

6    did with them after she removed them?

7    A.    That she preserved them in the office.

8         Q.    Do you know how she preserved them?

9    A.    No, I do not.

10        Q.    What is your understanding of Denise

11   Campbell's testimony regarding the T-stands --

12   strike that -- the faceouts in this case?

13   A.    My understanding is that she went to the

14   store and picked up the faceouts and T-stand.

15        Q.    What's your understanding about where

16   those T-stands and faceouts were stored prior to her

17   picking them up?

18   A.    I believe the faceouts were in a back room

19   and I believe the T-stand she had removed from the

20   sales floor.

21        Q.    Did you read in Nada Batres' deposition

22   where she said that she wasn't sure if the faceouts

23   she gave Denise were the ones she pulled out from

24   the T-stands on the night of the accident?

25   A.    I don't remember that specifically.   It's

13

1    been a long time since I read her transcript.

2         Q.    Did you review anything in preparation

3    for your deposition today?

4    A.    Yes.

5         Q.    What did you review?

6    A.    My transcript and a rough copy of Denise's.

7         Q.    Did Denise ever tell you that Nada

8    Batres told her that the T-stands she removed on the

9    night of the accident were not the same ones she

10   gave Denise?

11   A.    That the T-stands she removed?

12        Q.    The faceouts -- if I said that, I

13   misspoke.  Let me repeat the question.

14             MR. PSAK:   Yes.

15        Q.    Let me actually make it better.

16             Did Denise ever tell you that Nada

17   Batres told her that she was not sure if the

18   faceouts she pulled from the T-stands on the day of

19   the accident were the same ones she gave Denise?

20   A.    I don't know if that's what she told me.  I

21   don't remember.

22        Q.    Did she ever tell you that the faceouts

23   she took from the T-stands on the night of the

24   accident -- strike that.

25             Did Denise ever tell you that Nada

WILLIAMS - DIRECT - ARNOLD

1    Batres told her that the T-stands she took -- let me
2    try that one more time.
3            Did Denise ever tell you that Nada
4    Batres told her that the faceouts she pulled from
5    the T-stands on the night of the accident were the
6    same ones she gave her on the day she came to Old
7    Navy to pick them up?
8    A.    I've always understood that the faceouts were
9    the same ones that she originally pulled, yes.
10            Q.    Where did you get that understanding
11    from?
12    A.    From Denise.
13            Q.    What did Denise tell you that gave you
14    that understanding, if anything?
15    A.    I don't remember how she told me, I think it
16    was in the course of a correspondence about her
17    going to the store.
18            Q.    So she sent you a letter or an E-mail
19    saying she went to the store?
20    A.    An E-mail.
21            Q.    And do you recall what that E-mail
22    said?
23    A.    No.
24            Q.    Do you recall when that E-mail was
25    sent?

1        A.     No, I don't know when it was sent.

2               Q.     Did you base your understanding that

3        the T-stands -- that the faceouts that Nada Batres

4        gave Denise were the ones she pulled from the

5        T-stands on the night of the accident from that

6        E-mail?

7        A.     I believe so, probably, yes.

8               Q.     I'd like to have that E-mail, please.

9        Do you have it with you?

10       A.     No, I do not.

11              Q.     Would you please provide it to your

12       attorney?

13              MS. ARNOLD:  Scott, can you send me

14       that E-mail?

15              MR. FERINGA:  We'll deal with that on

16       another issue.

17              MS. ARNOLD:  Is that a no?

18              MR. FERINGA:  I'm not acceding to your

19       request.

20              MS. ARNOLD:  Okay.

21              Q.     Are there any other writings between

22       you and Denise Campbell regarding the T-stands or

23       the faceouts in this case?

24       A.     There's other correspondence between me and

25       Denise Campbell about the case.  I couldn't tell you

1    what they contain with regards to the T-stands and

2    faceouts.

3              Q.    That --

4    A.    I don't remember.

5              Q.    Okay.  That E-mail that we were

6    discussing before, you said you didn't know the date

7    and you couldn't recall what was in it, but you said

8    that she sent you an E-mail when she went to pick

9    them up?

10             MR. PSAK:  Object to the form.

11   A.    I don't know when she sent the E-mail.

12             Q.    In Nada Batres' deposition, and I'm

13   referring to page 100 of her first deposition for

14   the lawyers, she testifies that she was not sure

15   whether or not the faceouts she gave Denise were the

16   ones she pulled from the T-stands on the night of

17   the accident.

18             Do you remember reading that?

19   A.    Vaguely, yes.

20             Q.    Okay.  In Denise Campbell's deposition

21   she testified that Nada Batres told her that the

22   faceouts she pulled from the T-stand on the night of

23   the accident were the same ones she gave Denise.

24             Do you remember reading that?

25   A.    Yeah, vaguely, I remember that.

                    WILLIAMS - DIRECT - ARNOLD                17

1               Q.    Do you know what the truth is?

2        A.    No.

3               MR. PSAK:   The truth about her

4        recollection or what these witnesses said?  I object

5        to the form.

6               MS. ARNOLD:   Hold on.   There's no

7        question before you, your attorney is just making an

8        objection.

9               Q.    Can you recall any instances where Nada

10       Batres told you something that was not accurate?

11              MR. PSAK:   I object to the form.

12       A.    I never talked to Nada.

13              MR. FERINGA:   I object.

14              MR. PSAK:   What has that got to do with

15       T-stands and faceouts?

16              Q.    Can you recall any instances where

17       Denise Campbell told you something that was

18       inaccurate?

19              MR. PSAK:   Same objection.   It's got to

20       do with something with T-stands and faceouts to be

21       proper in this proceeding.

22              MS. ARNOLD:   Well, I think, you know

23       what, we can call the Judge, but I think she made

24       her ruling clear that you can object to form as to

25       any question that I ask, but only the privilege is

1   protected and I don't think that if we're talking

2   about something as general as I'm saying --

3                MR. PSAK:  Uh-huh.

4                MS. ARNOLD:   -- that this is a

5   privilege, but if you want to invoke the privilege,

6   then we'll call the Judge and we'll see what she has

7   to say.

8                MR. PSAK:  No, I'm not invoking the

9   privilege.

10               MS. ARNOLD:  Okay.

11               MR. PSAK:  But what I'm saying is that

12  are you asking her whether Nada or Denise ever lied

13  to her before any time in her life?  Is that the

14  question?

15               MS. ARNOLD:  Well, I didn't use the

16  word lie.  You can read back the question, Terry.

17               MR. PSAK:  Well, no, you didn't say lie

18  but you're -- the implication was that did they ever

19  tell you something that wasn't the truth?

20               MS. ARNOLD:  That's not an implication

21  and I didn't say "not the truth."  I said

22  inaccurate.

23               MR. PSAK:  Inaccurate, okay.  Let's

24  stick with your words.

25               What has that got to do with Denise's

WILLIAMS - DIRECT - ARNOLD

1   possession of faceouts or --

2           MS. ARNOLD:  Well, George, I mean, we

3   have two people saying completely different things.

4   So if you want to make an objection for the record,

5   that's fine --

6           MR. PSAK:  I made an objection.

7           MS. ARNOLD:  -- if you want to call the

8   Judge -- are you telling her not to answer the

9   question?  That's all I'm asking.

10          MR. PSAK:  No, I'm objecting to the

11  form.  She can answer the question, if she's

12  capable.

13          MS. ARNOLD:  Could we read it back,

14  though, so I can remember what it was?

15          (Stenographer reads back as requested.)

16  A.      Told me something?  Like called me and told

17  me something?  I don't understand the question.

18          Q.      Let me -- let me expand.  Can you

19  recall any instances where Denise Campbell has

20  communicated to you in any way something that's

21  inaccurate?

22          MR. PSAK:  I object to the form.

23  A.      No.

24          Q.      Why hasn't Denise Campbell gotten any

25  new cases from the Gap since she was terminated in

1          this case?

2                         MR. PSAK:  One second.

3                         MR. FERINGA:  That's beyond the scope.

4                         MR. PSAK:  Yeah.

5                         MS. ARNOLD:  Well, the Court said it

6          wasn't yesterday -- Tuesday, Scott.

7                         MR. PSAK:  No, no.  Let me make an

8          observation here.  I understand that you're trying

9          to explore bias, okay, and with respect to Denise

10         Campbell that may have some bearing whether I agree

11         with the Judge's ruling or not, but what does the

12         Gap's decision to either send cases to Denise

13         Campbell or not have to do with bias of Denise

14         Campbell?

15                         MS. ARNOLD:  Because if Denise Campbell

16         knows why she hasn't gotten any new cases, because

17         maybe it has to do with some kind of animosity, then

18         that's bias.

19                         MR. PSAK:  Did you ask Denise?  You

20         did, actually, I thought you did.

21                         MS. ARNOLD:  But I'm allowed to ask her

22         too.  People tell me all different things in this

23         case.

24                         MR. PSAK:  Well, here's the deal,

25         though.  I think that if you're asking a

1      representative of the Gap of their decisions to send

2      an attorney work, that's privileged, and that's

3      beyond the waiver that we've given you in this case.

4      It is much broader with respect to Denise, you know,

5      and, granted, if you want to explore the bias of

6      Denise and her testimony, that's fine, but that's

7      not an issue here.

8                 MS. ARNOLD:  Well, sure it is.

9                 MR. PSAK:  How?  You're exploring the

10     bias of Fiona Williams?

11               MS. ARNOLD:  No, I want to know why

12     Denise hasn't gotten new work and if she knows about

13     why she hasn't gotten new work and, absolutely, that

14     would go to her bias.

15               MR. FERINGA:  That's an -- let me weigh

16     in on this.

17               MS. ARNOLD:  I'm sorry?

18               MR. FERINGA:  That's a private

19     privilege business decision.

20               MS. ARNOLD:  You know what --

21               MR. FERINGA:  That goes beyond the

22     scope -- may I finish, please?

23               MS. ARNOLD:  Yeah, yeah, yeah.  But I'm

24     going to call the Judge and let the Judge decide.

25               MR. FERINGA:  Thank you.

WILLIAMS - DIRECT - ARNOLD

1          I've read what the judge decided with

2     respect to Denise Campbell.  It's completely

3     different when it comes to Fiona Williams and this

4     now goes beyond the scope of the inquiry that can be

5     made to Fiona Williams based upon the judge's order.

6     That's a privileged private business decision

7     between counsel and Gap and that is far beyond the

8     scope of anything here.

9          MS. ARNOLD:  Okay.  You know, Scott,

10    you may be right, but I don't agree with you, so

11    I've a few more questions that I want to ask Fiona,

12    and then I'll see if I can get the Judge on the

13    phone to make a determination as regards that

14    question.

15         MR. PSAK:  Okay.

16         MS. ARNOLD:  Because I don't want to --

17    I like to save everything up until the end to call

18    her because I don't want to keep calling her.

19         MR. PSAK:  Absolutely, I agree.

20         MS. ARNOLD:  Let's just go off the

21    record for one second.

22         (Discussion held off the record.  Back on the

23         record.)

24         Q.    Fiona, who is Pomeroy Tuttle?

25    A.    I believe he's an employee at the store.

1          Q.   Do you know when he became an employee

2    of the store?

3    A.    No, I do not.

4          Q.   Do you know if it was before or after

5    Wei Ngai's accident happened?

6    A.    I don't know.

7          Q.   Have you ever spoken with him about

8    this case?

9    A.    No, I have not.

10         Q.   Have you ever spoken with Denise about

11   him?

12   A.    I believe that she told me that she had a

13   conversation with him at one point.

14         Q.   Do you know when she told you that?

15   A.    No, I don't remember.

16         Q.   Do you know what the conversation was

17   about?

18   A.    No, I don't remember.

19         Q.   Do you remember why she told you that

20   she had a conversation with him?

21   A.    I believe she was either at the store or

22   trying to get in touch with the store and he was

23   there instead of Dean.  I just don't know the facts,

24   though.

25         Q.   Is there any writing which would

1    refresh your recollection regarding that

2    conversation that you had with her?

3    A.    I don't know.

4         Q.    Did you take notes during that

5    conversation?

6    A.    I don't know if it was a conversation or an

7    E-mail.  I just remember the names, it was different

8    names, but I don't remember the context of any

9    conversations.

10        Q.    So it's possible that she didn't tell

11   you this, but that she E-mailed it to you?

12             MR. PSAK:  Objection to the form.  You

13   can answer it.

14   A.    It's possible.

15        Q.    Would you still have any E-mail that

16   she sent you regarding Pomeroy Tuttle?

17   A.    Regarding him specifically or him -- his name

18   being in the E-mail?

19        Q.    Regarding any --

20   A.    I don't know.

21        Q.    Regarding anything that she said to you

22   about her conversation with her.

23   A.    If she communicated it to me by E-mail, it

24   would be in there, yes.

25        Q.    Let's look at the May 22nd, 2009,

1       letter, that we marked as Exhibit 2 at Denise's

2       deposition.

3       A.      Is this the letter I need to get?

4               Q.      Yeah, yeah, yeah.

5       A.      Scott?

6               Q.      Yes.

7       A.      Let me go get it.

8               Q.      Thank you?

9       A.      I'll go get it.

10                      MS. ARNOLD:  You want a copy of that?

11                      MR. PSAK:  No.

12      A.      Okay, I've got it.

13                      MR. PSAK:  Do you want to mark it as an

14      exhibit here?

15                      MS. ARNOLD:  No, unless you think we

16      should.

17                      MR. FERINGA:  No, it don't matter to

18      me.

19              Q.      I'm referring to what's been marked P.

20      CAMPBELL for identification at Denise's deposition,

21      2.

22                      Scott, do you need me to mark this

23      again here?

24                      MR. FERINGA:  It should be attached to

25      this deposition, marked.

WILLIAMS - DIRECT - ARNOLD

```
1                    MS. ARNOLD:   Okay.  Would you please be

2         so kind?

3                    (Exhibit received and marked P. WILLIAMS-2

4                    for identification.)

5                    MR. FERINGA:   What's P. WILLIAMS-1?

6                    MR. PSAK:   That's the documents that I

7         gave to Miss Arnold this morning about the document

8         request and the response.

9                    MR. FERINGA:   Okay.  Thanks.

10                   MR. PSAK:   And I guess while we're

11        reviewing that, that would be Miss Arnold's letter

12        of June 3rd of 2009 and I believe the response

13        totals, everything totals 13 pages.

14                   Q.    Fiona, did you have any conversations

15        with Denise regarding her deposition?

16        A.    No.

17                   Q.    When was the last time you spoke to

18        her?

19        A.    The last time I spoke to her, I don't

20        remember.

21                   Q.    Was it more than -- strike that.

22                   Was it after she stopped being the

23        Gap's lawyer in this case?

24        A.    She's still handles cases for us, so, I hear

25        from her by E-mail with status reports on current
```

1          cases.

2                  Q.    Okay.  The question is spoken to her.

3          A.    I have not -- I don't remember the last time

4          I spoke with her.

5                  Q.    Do you remember if it was after she

6          stopped being the Gap's attorney in this case?

7          A.    I believe I've spoken to her since, yes.

8                  Q.    Okay.  This letter says, we will

9          compensate you for your time in preparing for and

10         attending this deposition.

11                 How much did you pay her for the time

12         in preparing for and attending the deposition?

13                 MR. FERINGA:  Just for the record --

14         A.    I don't know.

15                 MR. FERINGA:  Just hang on, just for

16         the record, this letter which is marked as P.

17         WILLIAMS-2 was sent by Jenny Novoa, Senior Director

18         of Risk Management, to Denise Campbell.  There's no

19         foundation that this witness has participated in

20         this or made any agreements with Denise Campbell

21         about her deposition.

22                 MS. ARNOLD:  That's true, but I just

23         wanted to see if she knew how much.  I'm not

24         insinuating --

25                 MR. FERINGA:  Well, that presumes that

 1          she --

 2                        MS. ARNOLD:  Hold on, let me just

 3          finish.

 4                        MR. FERINGA:  That presumes --

 5                        MS. ARNOLD:  I'm not insinuating --

 6          hold on, Scott, let me just finish and then you

 7          talk, okay?

 8                        My question is not insinuating that she

 9          made a contract or that she's responsible to pay

10          Denise.  Maybe I should have rephrased the question.

11                   Q.   Do you know how much Denise was paid

12          for her preparation for the deposition?

13                        MS. ARNOLD:  Is that better.

14          A.        No.

15                   Q.   Did you say no, Fiona?

16                        MR. PSAK:  She said no.

17          A.        I said no, sorry, no.

18                   Q.   Do you know why she wanted to talk to

19          you?

20          A.        No.

21                   Q.   See in the second paragraph, last line,

22          it says, we know that you understand why this cannot

23          take place.

24          A.        Yeah, I see it.

25                   Q.   Do you know what Jenny Novoa meant when

1    she said that?

2    A.    Probably because we're both going to be

3    deposed, so the conversation would become

4    discoverable.

5         Q.    Okay.  I don't have anymore questions

6    for Fiona except for that -- except for that

7    question and the one follow-up regarding the cases.

8    Now, I'd like to suggest that you let me ask her the

9    question and let her answer it and then we can argue

10   later on as to whether or not what she tells me is

11   admissible, I don't think it's anything secret.  I

12   can give you my word that or sign a document that it

13   won't go outside of this room.  I think it's kind of

14   silly to bother the Judge now over two questions.

15              MR. PSAK:  Well --

16              MR. FERINGA:  Well, before --

17              MS. ARNOLD:  Especially since last --

18              MR. FERINGA:  Before we get into

19   that --

20              MS. ARNOLD:  -- last deposition she

21   ruled that this was a discoverable area, but if you

22   want to call the Judge, I'm okay with it.

23              MR. PSAK:  Well, for us --

24              MR. FERINGA:  Before we get into that,

25   I have some questions that I have of Fiona.

1                   MS. ARNOLD:  Okay.

2                   MR. FERINGA:  All right?

3                   CROSS EXAMINATION BY MR. FERINGA:

4           Q.    Fiona, you have a copy of your

5   deposition that was taken in October, on October 20

6   present in front of you, correct?

7   A.    Yes.

8           Q.    Okay.  Will you please turn to page 103

9   and look at the testimony beginning on line 15?

10   A.    Okay.

11          Q.    Look at the testimony beginning line 15

12   through line 25 and at page -- top of 104, lines one

13   through eight.

14            Do you see that?

15   A.    Yes.

16          Q.    In answer to one of Miss Arnold's

17   questions you indicated that there was a question

18   about preservation of T-stand and faceouts and

19   having those brought to Miss Arnold's office.

20            Do you remember that series of

21   questions?

22   A.    Yes.

23          Q.    Does looking at your deposition help

24   refresh your recollection as to when that

25   conversation took place?

1    A.    It looks like it took place early October.

2          Q.    And does this help refresh your

3    recollection?

4    A.    Yes, it does.

5          Q.    Thank you.

6          MR. FERINGA:  I have no other

7    questions.

8          MS. ARNOLD:  But it's good to see that

9    you would rehabilitate a witness in the event you

10   realize that the testimony given was not quite

11   accurate.

12         MR. PSAK:  Knowing he doesn't have an

13   obligation to do so.

14         MR. FERINGA:  It's nice to see, I have

15   no obligation to do so at any particular point in

16   time, Miss Arnold as you well know.  I can

17   rehabilitate a witness at any point in time

18   according to the rules of evidence.

19         MS. ARNOLD:  It's good that you know

20   that you are able to do that.

21         MR. PSAK:  You know, Rosemarie, I

22   appreciate your willingness to kind of hold in

23   abeyance the response to the question concerning why

24   Denise didn't get any new work, but I think for us

25   to agree to that, we'd have to kind of know what the

1    witness' answer would be before she did it.

2                    MS. ARNOLD:  Okay.  Well, only because,

3    in my mind I don't know why, I asked Tracy yesterday

4    to call the Court and I can't remember if she did or

5    what she told me, is that the Judge might not even

6    be available and I don't want to have this whole

7    issue --

8                    MR. PSAK:  I understand.

9                    MS. ARNOLD:  -- by getting Fiona, but I

10   don't mind walking out of the room while you talk

11   and discuss it amongst yourselves and decide.

12                   MR. PSAK:  That's exactly it.

13                   If you give me 30 seconds to chat with

14   Fiona, with your permission, because it wouldn't

15   normally be allowed, perhaps we can do that.

16                   MS. ARNOLD:  Okay.

17                   MR. FERINGA:  All right.  I would

18   prefer not to do it on a video conference, which I

19   consider to be a public entity whether you're in the

20   room.  What I would prefer is we have a telephone

21   conversation at this juncture and we can do it by --

22   I can -- we can do it by cell phone.  George, I

23   don't mind if you call Fiona, who has her cell

24   phone, I believe, there, but I do not want it done

25   over a video conference.

1            MR. PSAK:  Yeah, I understand.

2            MS. ARNOLD:  And, obviously, we're not

3    going to do anything that's going to influence her

4    answer, right?

5            MR. PSAK:  No.

6            MS. ARNOLD:  You're just going to ask

7    her what is your answer to see if it's something you

8    don't really you have an objection to.

9            MR. PSAK:  Yeah, let me -- give me a

10   few minutes, and what I'll do is I'll make a phone

11   call to Fiona and to Scott and hopefully we'll have

12   this resolved within about two, three minutes.

13           MS. ARNOLD:  I'm trusting you, Psak.

14           MR. PSAK:  Well, if you only have one

15   question left, right?

16           MS. ARNOLD:  One and one follow-up

17   depending on what the answer is.

18           MR. PSAK:  Okay.  Okay.

19           MR. FERINGA:  George.

20           MR. PSAK:  Yeah.

21           MR. FERINGA:  I'm back.

22           MS. ARNOLD:  Scott, were you talking to

23   Fiona just then?

24           MR. FERINGA:  Yes.

25           MS. ARNOLD:  Because I heard you say to

1    her, at one point, what an answer to a question

2    should be and I don't think that's appropriate.

3    Also, Scott --

4              MR. FERINGA:  I didn't tell her what

5    the answer should be.

6              MS. ARNOLD:  Hold up, let me finish.

7    This deposition started at 2:45 this afternoon and

8    during this deposition, I think you accidentally

9    sent me a text message that was meant to go to Fiona

10   and I'm going to ask you to please preserve all text

11   messages that you sent from your phone from 2:45

12   today until we are speaking right this second,

13   because I'm going to ask the Court to look at them

14   to see if you were improperly communicating with

15   your witness via text messaging during this

16   deposition, which was court ordered to be in my

17   office, but as a courtesy to your witness, I

18   consented to having it done via video conferencing.

19             MR. FERINGA:  All right.  So what's the

20   question on the floor?

21             MS. ARNOLD:  The question on the floor

22   is:  Do you know why Denise hasn't gotten any new

23   cases from the Gap since she ceased to be the Gap's

24   lawyer in this case?

25             MR. PSAK:  And I have an objection.

1      A.      Do you want me to answer the question?

2                     MS. ARNOLD:  Only if your lawyer tells

3      you to.

4                     MR. PSAK:  No, I believe that at that

5      point we need to invoke the privilege.

6                     MS. ARNOLD:  Okay.  So you're telling

7      her not to answer the question?

8                     MR. PSAK:  Yes.

9                     MS. ARNOLD:  Okay.  Let's just get the

10     Judge on the phone.  Before I get the Judge on the

11     phone, Scott, do you consent to preserving your

12     messages or should I make that an issue of this

13     conversation?

14                    MR. FERINGA:  I'll preserve my

15     messages.  That's fine.

16                    MS. ARNOLD:  Thank you.

17              (The following is a telephone conference with

18              Judge Shwartz.)

19                    VOICE:  Good afternoon, Judge Shwartz's

20     chambers.

21                    MS. ARNOLD:  Good afternoon, this is

22     Rosemarie Arnold and George Psak.

23                    MR. PSAK:  Okay.

24                    MS. ARNOLD:  In a deposition on Wei

25     Ngai.  Could we speak to Amin, please?

1          VOICE:  Okay.  On what matter?  Sorry,

2     I didn't here you.

3          MS. ARNOLD:  Wei Ngai.

4          VOICE:  Can you spell that for me he.

5          MS. ARNOLD:  W-E-I  N-G-A-I, or for the

6     Judge for that matter, if she's available.  The last

7     time we called, Amin fielded the call.

8          VOICE:  Okay.  All right.  Hold on one

9     moment, please.

10          LAW CLERK:  Good afternoon, this is

11     Amin Abucci, Judge Shwartz's law clerk speaking.

12          Who do I have on the phone, please?

13          MS. ARNOLD:  Hi, Amin, it's Rosemarie

14     Arnold and George Psak is in my office and we have

15     via video conferencing, Scott Feringa and a witness.

16          We are down to the last two questions.

17     We saved everything till the end to call the Judge.

18          LAW CLERK:  Okay.

19          MS. ARNOLD:  And we would like to ask

20     for a ruling.

21          LAW CLERK:  Okay.

22          MS. ARNOLD:  On the privilege on this

23     last question.

24          LAW CLERK:  Okay.  What's the -- what's

25     the nature of the privilege asserted?

 1                     MS. ARNOLD:  Let me give you a little

 2        background.  Fiona Williams is the claims manager.

 3                     Is that right, Fiona?

 4                     THE WITNESS:  Yes.

 5                     MR. PSAK:  Yes.

 6                     MS. ARNOLD:  Of the Gap.  At her

 7        deposition on Tuesday, Denise Williams --

 8                     MR. PSAK:  Denise Campbell.

 9                     MS. ARNOLD:  Denise Campbell testified

10        with the Judge on the phone and with the Judge's

11        permission that she had not received any new cases

12        from the Gap since the time she was terminated from

13        this case.

14                     LAW CLERK:  Uh-huh.

15                     MS. ARNOLD:  The question to the claims

16        manager was:  Do you know why Denise Campbell hasn't

17        received any new cases from the Gap since her

18        termination in this case?

19                     LAW CLERK:  Okay.  And that's been

20        objected to on privilege grounds, correct?

21                     MR. PSAK:  Privilege grounds, correct.

22                     LAW CLERK:  What privilege?

23                     MR. PSAK:  Attorney-client privilege.

24                     LAW CLERK:  Attorney-client?

25                     MR. PSAK:  Yes.

WILLIAMS - CROSS - FERINGA

1          LAW CLERK:  Okay, thank you.  Okay.

2  And you said there were two questions.  That was the

3  first one, right?

4          MS. ARNOLD:  Well, the second one

5  really depends on how the first one gets answered,

6  you know, then there might be a follow-up or two,

7  but obviously it would, you know, revolve around

8  whether the Judge says I could even ask that one.

9          LAW CLERK:  Okay.  Folks, if you could

10  just hold on one second for me.

11          MS. ARNOLD:  Thank you.

12          LAW CLERK:  Thanks.  Hi everyone, the

13  Judge is available, she'll speak with the parties.

14  I just want to ensure that when she picks up, she'll

15  be on the record.

16          MS. ARNOLD:  We're on the record now,

17  uh-huh, yes.

18          LAW CLERK:  All right, wonderful.

19  Please hold.

20          JUDGE PATTY SHWARTZ:  Good afternoon,

21  everybody.  Who do I have on the phone today?

22          MS. ARNOLD:  Good afternoon, Judge.

23  This Rosemarie Arnold.

24          MR. PSAK:  George Psak, and we're on a

25  video conference and we have Scott Feringa, who is

1      also an attorney for the Gap in Southfield,

2      Michigan, and the witness, Fiona Williams, in

3      California.

4                      JUDGE PATTY SHWARTZ:  Okay.  Where is

5      the reporter?

6                      MS. ARNOLD:  She's here.

7                      MR. PSAK:  We're on the record.

8                      JUDGE PATTY SHWARTZ:  Okay.  Could the

9      reporter hear me okay?  Okay.

10                     My law clerk told me that there's a

11     relatively narrow question that you're looking for a

12     ruling on, so maybe I could have counsel, for the

13     purposes of the record, tell me what the question is

14     and then I can hear the objection and then give you

15     a ruling.

16                     MS. ARNOLD:  Yesterday your Honor was

17     on the phone and permitted me to ask Denise Campbell

18     if she had received any new cases from the Gap since

19     she was terminated as their lawyer in this case.

20     The witness is the claims manager for the Gap and I

21     asked her:  Do you know why the Gap hasn't sent

22     Denise Campbell any new cases since she was

23     terminated on this case?  That's it.

24                     JUDGE PATTY SHWARTZ:  And that's the

25     question pending to Miss Williams?

1           MR. PSAK:  That's correct.

2           JUDGE PATTY SHWARTZ:  Could I hear the

3      objection?

4           MR. PSAK:  The objection is on the

5      attorney-client privilege, your Honor, because

6      yesterday when we allowed Miss Williams -- Miss

7      Campbell to answer that question, even though it

8      went beyond the scope of the pre-trial order, your

9      Honor felt it may go to perhaps some bias with

10     respect to Miss Campbell and her testimony, but the

11     same situation doesn't exist here.  This doesn't

12     have an impact upon Denise Campbell's testimony.

13          JUDGE PATTY SHWARTZ:  The only issue

14     that struck me in hearing what this is, is whether

15     or not there would be an objection to this question.

16          MR. PSAK:  Right.

17          JUDGE PATTY SHWARTZ:  And I'll explain

18     to you why it is this question may not implicate the

19     concerns of privilege.

20          MR. PSAK:  Right.

21          JUDGE PATTY SHWARTZ:  If the question

22     put to the witness was:  Did Miss Campbell's conduct

23     in this case have any impact on the Gap's decisions

24     about giving her future work, that's a very narrow

25     issue.

1           MR. PSAK:  Right.

2           JUDGE PATTY SHWARTZ:  And I think it

3    would allow, if there's going to be a follow-up, a

4    much narrower follow-up that might not implicate

5    privilege at all or it might be within the scope of

6    the waiver depending on how the questions go.

7           What is the defendant's position if the

8    question is phrased that way?

9           MR. PSAK:  If the question were to be:

10   Did Denise Campbell's conduct in the Ngai case

11   influence your decision not to send her new work?

12          JUDGE PATTY SHWARTZ:  Yes.

13          MR. PSAK:  Well, again, I think the --

14   my response is -- is identical, Judge.  I believe

15   that the -- to allow questions in this area goes to

16   the bias of Denise Campbell, and we haven't

17   established there's been any communication between

18   these parties with respect to not getting new work,

19   and if the Gap, and I don't even know whether this

20   witness knows the response, but what does the Gap's

21   frame of mind have to do with the bias of Denise

22   Campbell?

23          JUDGE PATTY SHWARTZ:  It's a slightly

24   different -- it would take it potentially in a

25   slightly different direction, not just bias, but if

1          the answer to the question is -- hypothetically is

2          yes --

3                        MR. PSAK:  Right.

4                        JUDGE PATTY SHWARTZ:   -- and the next

5          question is:  Did it have to do -- was the conduct

6          that caused concern something that dealt with the

7          possession of the instrument at issue, that I think

8          could lead to the discovery of admissible evidence

9          and within the subject matter waiver.  That's why I

10         could see a question in that vein either not being

11         privileged or alternatively to the extent privileged

12         within the scope of the waiver.

13                       Let me hear from the plaintiff about

14         your views about the questioning that I'm proposing

15         and your adversary's position.

16                       MS. ARNOLD:  Well, your Honor, those

17         are exactly the follow-up questions that I had

18         intended to ask.  I said to Amin, depending on the

19         answer to this question, I might have another

20         follow-up or two, because rather than get into it, I

21         wanted to ask her if she even knew, because it might

22         not even be her job to know, that's why I asked her

23         do you know, and if she said yes, then I was going

24         to ask her exactly those questions.

25                       JUDGE PATTY SHWARTZ:  All right.  First

1    of all, whether she has knowledge of reasons in and

2    of itself is not privileged, it would be, it could

3    be privileged for other -- the subject or

4    information that constitutes those reasons could be

5    privileged, but the first question is, if the

6    question was, in fact, do you know the reason why

7    Miss Campbell is not receiving work from the Gap

8    anymore?  That's an easy yes or no or it does not

9    implicate privilege, so I will overrule privilege

10   objection, if you want to answer that.

11            MR. PSAK:  Judge, you should understand

12   that she actually is currently doing work for the

13   Gap, but all right.  I respect your Honor's ruling

14   I'm just -- I don't want to get down a slippery

15   slope here.

16            JUDGE PATTY SHWARTZ:  And I understand,

17   so why don't we ask that limited question first,

18   Miss Arnold, and then we'll take the next question.

19            MS. ARNOLD:  Okay.

20            MR. PSAK:  All right.

21       Q.    You can answer that question, Miss

22   Williams.

23            MR. PSAK:  Could you repeat the

24   question for the witness?

25            MS. ARNOLD:  Sure.

1        Q.    Miss Williams, do you know why Denise

2   Campbell hasn't gotten any new cases from the Gap

3   since the time she stopped being their lawyer in

4   this case?

5        A.    I don't know if it's true that she hasn't

6   gotten new cases since she was removed from this

7   case.

8        Q.    She testified to that on Tuesday.

9              When you reviewed her transcript, as

10  you stated you did, did you not see that?

11       A.    I did see that.  I'm just telling -- I don't

12  know when the last case I sent her was.  I don't

13  remember --

14       Q.    Are you the person that decides --

15       A.    -- the date.

16       Q.    Are you the person that decides where

17  the cases get sent as far as lawyers are concerned?

18       A.    Yes.

19       Q.    Is there a reason why you have not sent

20  her any new cases since she's been terminated as

21  your lawyer in this case?

22             MR. PSAK:  Well, I object to the form,

23  I think the witness has answered she's not sure that

24  that's true.

25             You want her to answer a hypothetical

                    WILLIAMS - CROSS - FERINGA

1       question?

2                       MS. ARNOLD:  I'm going to ask her one

3       right now actually.

4                       MR. PSAK:  Okay, please do.

5                       MS. ARNOLD:  I'll withdraw that

6       question.

7               Q.      Fiona, in her deposition on Tuesday,

8       Miss Campbell testified that she has not received

9       any new cases from the Gap since she was terminated

10      in this case.

11                      Do you know of any case that you sent

12      her since that time?

13      A.      I don't remember the last -- when the last

14      case I sent her was or whether it was after that

15      date.

16              Q.      Do you remember affirmatively sending

17      her any cases since the time she was terminated as

18      the Gap's lawyer in this case?

19      A.      I don't even know what that date is, I don't

20      know.

21              Q.      Do you intend on sending her new cases

22      in the future?

23                      MR. PSAK:  Objection.

24                      JUDGE PATTY SHWARTZ:  Sustained.

25              Q.      Did Miss Campbell's conduct in this

1    case have anything to do with your intention of

2    sending her cases in the future?

3                MR. PSAK:  Object to the form.  Again,

4    I'm not certain that the Court --

5                MS. ARNOLD:  Well, you can object to

6    the form and I can stand by my question, but you

7    don't have to make a speaking objection regarding

8    form.

9                MR. PSAK:  No, I'm not trying to make a

10   speaking objection.  I just -- if the witness

11   understands it, I'll allow it.

12   A.    Can you repeat it, please?

13               MR. PSAK:  We're going to have the

14   reporter read it back, Fiona.

15               (Stenographer reads back as requested.)

16   A.    I just don't know what you're looking for

17   here.  I actually think I may have sent her a case

18   afterward, I just don't remember the dates.  We use

19   other attorneys in New Jersey, as in other states.

20   We don't always consistently send all our cases to

21   one attorney.

22   Q.    So are you telling me, Miss Williams,

23   that Miss Campbell's conduct in this case is not

24   going to affect your sending her future cases?

25               MR. PSAK:  Objection.

1          JUDGE PATTY SHWARTZ:  Sustained.

2          MS. ARNOLD:  Your Honor, I'm not sure

3    why the objection is being sustained, is it on the

4    privilege?

5          JUDGE PATTY SHWARTZ:  Yes, on the

6    privilege.

7          MS. ARNOLD:  Okay.

8          Q.    Is it your testimony, Fiona, that you

9    think you've sent her a case since she was

10   terminated in this case, a new case?

11   A.    I would need to check, but I'm not so sure

12   that I haven't.  I just don't remember the dates.

13         Q.    Is there a document which would

14   indicate whether or not you did?

15   A.    Well, yeah, I can look at the date that the

16   cases were sent to her and I can look at the date

17   that she was removed from this case.

18         Q.    In the event that you have not sent her

19   a case and she was terminated in this case, does it

20   have anything to do with her conduct in this case?

21         MR. PSAK:  I object to the form.

22   A.    I don't even remember how many cases we

23   received since then in New Jersey.

24         Q.    Well, that's not responsive to the

25   question.

1                    Do you want me to repeat the question?

2          A.     Please.

3                    Q.     You told me that you don't know if you

4          sent her a case since you terminated her in this

5          case.

6                    If it turns out --

7          A.     That's correct.

8                    Q.     -- you check your records and you have

9          not sent her any cases since she was terminated in

10         this case, is that because of her conduct in this

11         case?  Yes or no is all you need to answer it.

12                   MR. PSAK:  I object to the form.  You

13         can answer it.

14         A.     No.

15                   Q.     Okay.  That's all then.

16                   JUDGE PATTY SHWARTZ:  Okay.  Everybody,

17         thanks a lot.

18                   MR. PSAK:  Thank you, Judge.

19                   MS. ARNOLD:  Thank you, Judge.

20                   JUDGE PATTY SHWARTZ:  You're welcome,

21         bye.

22                   (Telephone conference with Judge Shwartz

23                   concluded at this time.)

24                   MR. FERINGA:  Thank you.

25                   MR. PSAK:  You're done?

WILLIAMS - CROSS - FERINGA

1              MS. ARNOLD:  I am.

2              MR. PSAK:  Thank you very much.

3              MR. FERINGA:  Thanks.  Make sure that

4     the exhibits are attached to all portions all the

5     transcripts, please.  Thank you very much.

6              MR. PSAK:  Okay.

7              (Concluded at 3:48 p.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

WILLIAMS - CROSS - FERINGA

<u>CERTIFICATE OF OFFICER</u>

1       I, THERESA L. TIERNAN, A Notary Public and

2 Certified Shorthand Reporter of the State of New

3 Jersey, do hereby certify that prior to the

4 commencement of the examination,

5       F I O N A    W I L L I A M S

6 was sworn by me to testify the truth, the whole truth

7 and nothing but the truth.

8       I DO FURTHER CERTIFY that the foregoing

9 is a true and correct transcript of the testimony as

10 taken stenographically by and before me at the time,

11 place and on the date herein before set forth.

12       I DO FURTHER CERTIFY that I am neither a

13 relative nor employee nor attorney nor counsel of any

14 of the parties to this action, and that I am neither a

15 relative nor employee of such attorney or counsel, and

16 that I am not financially interested in the action.

17

18

19

20 _____

21 Notary Public of the State of New Jersey
C.S.R. License No. XI01210

22

23

24

25

**1**

10 [2] 1/8 1/9
100 [1] 16/13
1000 [2] 2/8 2/9
103 [1] 30/8
104 [1] 30/12
11 [1] 4/24
12 [1] 4/24
127 [1] 2/13
13 [1] 26/13
1386 [2] 1/15 2/4
146 [1] 1/24
15 [2] 30/9 30/11

**2**

20 [1] 30/5
2009 [3] 1/17 24/25 26/12
201 [1] 1/25
22nd [1] 24/25
25 [1] 30/12
25800 [1] 2/9
26 [1] 3/10
2950 [1] 1/20
2:07-cv-5653 [1] 1/2
2:36 [1] 1/17
2:45 [2] 34/7 34/11

**3**

30 [2] 3/6 32/13
30800 [1] 1/20
3900 [1] 4/3
3:48 [1] 49/7
3rd [1] 26/12

**4**

48075 [1] 1/21
48075-1000 [1] 2/9
493-7474 [1] 1/25

**5**

5653 [1] 1/2

**7**

7474 [1] 1/25

**9**

915 [1] 1/18

**A**

ABC [1] 1/8
abeyance [1] 31/23
able [1] 31/20
about [31] 4/24 6/15 7/3 7/4 7/9 7/13 8/5 9/1 9/4 9/7 9/10 9/12 10/12 11/10 12/15 14/16 15/25 17/3 18/21 21/12 23/7 23/10 23/17 24/22 26/7 27/21 30/18 33/12 40/24 42/13 42/14
absolutely [2] 21/13 22/19
Abucci [1] 36/11
acceding [1] 15/18
accident [12] 5/24 11/7 11/9 12/24 13/9 13/19 13/24 14/5 15/5 16/17 16/23 23/5
accidentally [1] 34/8
according [1] 31/18
accurate [2] 17/10 31/11
action [3] 1/2 50/15 50/17
actually [8] 6/23 7/1 7/4 13/15 20/20 43/12 45/3 46/17
Ad [1] 1/3
admissible [2] 29/11 42/8

affect [1] 46/24
affirmatively [1] 45/16
after [6] 10/7 12/6 23/4 26/22 27/5 45/14
afternoon [6] 34/7 35/19 35/21 36/10 38/20 38/22
afterward [1] 46/18
again [3] 25/23 41/13 46/3
agree [4] 20/10 22/10 22/19 31/25
agreements [1] 27/20
ahead [1] 12/1
all [18] 19/9 20/22 30/2 32/17 34/10 34/19 36/8 38/18 41/5 42/25 43/1 43/13 43/20 46/20 48/11 48/15 49/4 49/4
allow [3] 41/3 41/15 46/11
allowed [4] 7/12 20/21 32/15 40/6
already [1] 7/13
also [3] 6/19 34/3 39/1
altered [1] 7/19
alternatively [1] 42/11
always [2] 14/8 46/20
am [4] 49/1 50/13 50/15 50/17
Amin [5] 35/25 36/7 36/11 36/13 42/18
amongst [1] 32/11
and/or [2] 1/8 1/8
animosity [1] 20/17
another [2] 15/16 42/19
answer [24] 6/18 7/15 11/25 19/8 19/11 24/13 29/9 30/16 32/1 33/4 33/7 33/17 34/1 34/5 35/1 35/7 40/7 42/1 42/19 43/10 43/21 44/25 48/11 48/13
answered [2] 38/5 44/23
any [38] 5/12 5/24 6/14 6/20 9/9 15/21 17/9 17/16 17/25 18/13 19/19 19/20 19/24 20/16 23/25 24/8 24/15 24/19 26/14 27/20 31/15 31/17 31/24 34/22 37/11 37/17 39/18 39/22 40/23 41/17 44/2 44/20 45/9 45/11 45/17 48/9 50/14
anymore [2] 29/5 43/8
anything [8] 13/2 14/14 22/8 24/21 29/11 33/3 46/1 47/20
AOL.COM [1] 1/25
apologize [1] 7/20
appreciate [1] 31/22
appropriate [1] 34/2
approximate [1] 5/20
approximately [1] 5/16
are [13] 5/7 15/21 18/12 19/8 31/20 34/12 36/16 42/17 44/14 44/16 44/17 46/22 49/4
area [2] 29/21 41/15
argue [1] 29/9
ARNOLD [12] 1/15 2/3 2/3 3/5 4/6 6/22 26/7 31/16 35/22 36/14 38/23 43/18
Arnold's [3] 26/11 30/16 30/19
around [1] 38/7
as [26] 4/5 4/25 5/3 7/23 8/6 17/24 18/2 18/2 19/15 22/13 25/1 25/13 27/16 29/10 30/24 31/16 34/17 39/19 44/9 44/17 44/17 44/20 45/3 46/16 49/10
ASHER [1] 2/7
ask [17] 7/8 17/25 20/19 20/21 22/11 29/8 33/6 34/10 34/13 36/19 38/8 39/17 42/18 42/21 42/24 43/17 45/2
asked [4] 7/2 32/3 39/21 42/22
asking [5] 8/16 8/18 18/12 19/9 20/25
asserted [1] 36/25
ATHERTON [1] 4/3
attached [2] 25/24 49/4
attempting [1] 6/20
attending [2] 27/10 27/12
attorney [13] 4/21 4/21 15/12 17/7 21/2 27/6 37/23 37/24 39/1 40/5 46/21 50/14 50/16
attorney-client [1] 37/23 37/24 40/5
attorneys [4] 2/5 2/10 2/15 46/19

AVENUE [1] 1/16 2/4
AVENUE [1] 2/13

**B**

back [11] 7/18 7/22 7/23 12/18 18/16 19/13 19/15 22/22 33/21 46/14 46/15
background [1] 37/2
base [1] 15/2
based [1] 22/5
Batres [8] 10/17 13/8 13/17 14/1 14/4 15/3 16/21 17/10
Batres' [2] 12/21 16/12
be [28] 8/23 10/25 17/20 22/4 22/10 24/24 25/24 26/1 26/11 29/2 32/1 32/6 32/15 32/19 34/2 34/5 34/16 34/23 38/6 38/15 40/15 41/3 41/5 41/9 42/22 42/3 43/3 43/4
bearing [1] 20/10
became [1] 23/1
because [16] 7/11 7/18 11/1 20/15 20/16 22/16 22/18 29/2 32/2 32/14 33/25 34/13 40/5 42/20 42/21 48/10
become [1] 29/3
been [5] 13/1 25/19 37/19 41/17 44/20
before [13] 4/9 11/19 16/6 17/7 18/13 23/4 29/16 29/18 29/24 32/1 35/10 50/11 50/12
beginning [2] 30/9 30/11
being [9] 1/9 4/4 7/24 24/18 26/22 27/6 42/10 44/3 47/3
believe [12] 9/15 12/18 12/19 17/7 22/25 23/12 23/21 26/12 27/7 32/24 35/4 41/14
best [1] 9/3
better [2] 13/15 28/13
between [4] 15/21 15/24 22/7 41/17
beyond [6] 20/3 21/3 21/21 22/4 22/7 40/8
bias [10] 20/9 20/13 20/18 21/5 21/10 21/14 40/9 41/16 41/17 41/25
both [1] 29/2
bother [1] 29/14
BREEN [1] 2/5
broader [1] 21/4
brought [1] 30/19
business [2] 21/19 22/6
bye [1] 48/21

**C**

C.S.R [1] 50/21
CALIFORNIA [3] 1/19 4/4 39/3
call [12] 10/11 17/23 18/6 19/7 21/24 22/17 29/22 32/4 32/23 33/11 36/7 36/17
called [2] 19/16 36/7
calling [1] 22/18
came [3] 6/12 9/18 14/6
Campbell [27] 4/14 5/13 15/22 15/25 17/17 19/19 19/24 20/10 20/13 20/14 20/15 22/2 25/20 27/18 27/20 37/8 37/9 37/16 39/17 39/22 40/7 40/10 41/16 41/22 43/7 44/2 45/8 39/24 40/7 44/4 44/7 44/12 44/21 45/10
Campbell's [7] 12/11 16/20 40/12 40/22 41/10 45/25 46/23
can [35] 5/16 5/20 6/17 7/15 7/17 9/3 9/13 15/13 17/9 17/16 17/23 17/24 18/16 19/11 19/14 19/18 22/4 22/12 24/13 29/9 29/12 31/16 32/15 32/21 32/22 32/22 36/4 39/14 43/21 46/5 46/6 46/12 47/15 47/16 48/13
can't [1] 32/4
cannot [1] 28/22
capable [1] 19/12
capacity [2] 4/25 5/2
CARIDDI [1] 1/23
CARIDDI-TIERNAN [1] 1/23
case [44] 5/5 6/4 10/13 11/12 11/15 11/21 12/12 15/23 15/25 20/1 20/23 21/3 23/8 26/23 27/6 34/24 37/13 37/18 39/19 39/23 40/23 41/10 44/4 44/7 44/12 44/21 45/10 45/11 45/14 45/18 46/1 46/17 46/23 47/9

cases [10] 47/10 47/10 47/17 47/17 47/19 47/19
47/20 48/4 48/5 48/10 48/11
cases [24] 19/25 20/12 20/16 26/24 27/1
29/7 34/23 37/11 37/17 39/18 39/22 44/2
44/6 44/17 44/20 45/9 45/17 45/21 46/2
46/20 46/24 47/16 47/22 48/9
caused [1] 42/6
ceased [1] 34/23
cell [2] 32/22 32/23
CENTER [1] 2/8
certain [1] 46/4
certainly [1] 7/10
CERTIFICATE [1] 50/1
Certified [3] 1/13 1/23 50/3
certify [3] 50/4 50/9 50/13
chambers [1] 35/20
chat [1] 32/13
CHAU [1] 1/4
check [2] 47/11 48/8
CIVIL [1] 1/2
claims [4] 8/24 37/2 37/15 39/20
clear [1] 17/24
clearly [1] 7/19
clerk [2] 36/11 39/10
client [3] 37/23 37/24 40/5
comes [1] 22/3
commencement [1] 50/5
commencing [1] 1/17
communicated [2] 19/20 24/23
communicating [1] 34/14
communication [1] 41/17
communications [1] 9/12
compensate [1] 27/9
completely [2] 19/3 22/2
concern [1] 42/6
concerned [1] 44/17
concerning [2] 5/13 31/23
concerns [1] 40/19
concluded [2] 48/23 49/7
conduct [7] 40/22 41/10 42/5 45/25 46/23
47/20 48/10
conference [5] 32/18 32/25 35/17 38/25
48/22
conferencing [2] 34/18 36/15
connection [1] 11/11
consent [1] 35/11
consented [1] 34/18
consider [1] 32/19
consistently [1] 46/20
constitutes [1] 43/4
contain [1] 16/1
contemporaneously [1] 10/6
context [1] 24/8
contract [1] 28/9
conversation [34] 5/21 6/2 6/7 6/10 6/13
7/24 8/3 8/7 8/10 8/13 8/20 8/25 9/5 9/8 9/14
9/19 9/24 10/3 10/6 10/7 10/9 10/10 10/15
23/13 23/16 23/20 24/2 24/5 24/6 24/22 29/3
30/25 32/21 35/13
conversations [11] 5/12 5/17 5/18 5/25
6/15 7/3 7/5 7/9 9/9 24/9 26/14
copy [3] 13/6 25/10 30/4
CORP [2] 1/8 1/8
correct [7] 8/17 30/6 37/20 37/21 40/1 48/7
50/10
correspondence [2] 14/16 15/24
could [16] 4/17 4/19 7/22 11/25 19/13 35/25
38/8 38/9 39/8 39/12 40/2 42/8 42/10 43/2
43/4 43/23
couldn't [3] 5/18 15/25 16/7
counsel [4] 22/7 39/12 50/14 50/16
couple [1] 5/22
course [1] 14/16

34/16 46/4
courtesy [1] 34/17
CROSS [1] 30/3
CRS [1] 3/2
current [1] 26/25
currently [1] 43/12
cv [1] 1/2

# D

date [12] 8/8 8/19 9/24 11/7 11/8 16/6 44/15
45/15 45/19 47/15 47/16 50/12
dates [2] 46/18 47/12
day [2] 13/18 14/6
deal [2] 15/15 20/24
dealt [1] 42/6
Dean [1] 23/23
decide [2] 21/24 32/11
decided [1] 22/1
decides [2] 44/14 44/16
decision [4] 20/12 21/19 22/6 41/11
decisions [2] 21/1 40/23
DEF [1] 1/8
defendant's [1] 41/7
Defendants [1] 1/10
delay [1] 11/2
Denise [55]
Denise's [4] 13/6 18/25 25/1 25/20
depending [3] 33/17 41/6 42/18
depends [1] 38/5
deposed [5] 4/7 4/9 5/4 11/14 29/3
deposition [30] 1/5 4/11 6/21 6/23 7/2 7/10
11/7 11/19 12/21 13/3 16/12 16/13 16/20
25/2 25/20 25/25 26/15 27/10 27/12 27/21
28/12 29/20 30/5 30/23 34/7 34/8 34/16
35/24 37/7 45/7
DESCRIPTION [1] 3/8
designations [1] 1/10
determination [1] 22/13
did [45] 6/6 6/9 7/8 8/7 8/12 9/19 10/2 10/5
10/6 10/12 10/14 11/10 11/13 11/17 11/19
12/6 12/21 13/2 13/5 13/7 13/16 13/22 13/25
14/3 14/10 14/13 15/2 18/18 20/19 20/20
20/20 24/4 26/14 27/11 28/15 32/1 32/4
40/22 41/10 42/5 44/10 44/10 44/11 45/25
47/14
didn't [9] 9/7 16/6 18/15 18/17 18/21 24/10
31/24 34/4 36/2
different [6] 19/3 20/22 22/3 24/7 41/24
41/25
DIR [1] 3/2
DIRECT [1] 4/6
direction [1] 41/25
Director [1] 27/17
discoverable [2] 29/4 29/21
discovery [1] 42/8
discussed [3] 6/6 6/9 32/11
discussed [2] 6/11 8/4
discussing [1] 16/6
discussion [2] 8/5 22/22
DISTRICT [2] 1/1 1/1
do [73]
document [7] 3/9 8/9 8/16 8/19 26/7 29/12
47/13
documentation [1] 8/21
documented [1] 10/1
documents [1] 26/6
does [7] 20/11 20/23 31/2 31/4 41/20 43/8
47/19
doesn't [5] 31/12 40/11 40/11
doing [1] 43/12
don't [58]
done [3] 32/24 34/18 48/25
down [2] 36/16 43/14
DRIVE [1] 1/18

during [7] 6/6 8/12 9/5 10/2 24/4 34/8 34/15

# E

E-mail [15] 14/18 14/20 14/21 14/24 15/6
15/8 15/14 16/5 16/8 16/11 24/7 24/15 24/18
24/23 26/25
E-mailed [1] 24/11
early [1] 31/1
easy [1] 43/8
EDID [1] 1/4
eight [1] 30/13
either [4] 6/15 20/12 23/21 42/10
employee [4] 22/25 23/1 50/14 50/16
end [2] 22/17 36/17
ENID [1] 1/3
ensure [1] 38/14
entity [1] 32/19
Especially [1] 29/17
ESQ [5] 1/19 2/3 2/8 2/12 2/13
established [1] 41/17
even [8] 32/5 38/8 40/7 41/19 42/21 42/22
45/19 47/22
event [2] 31/9 47/18
ever [12] 5/12 10/12 11/10 13/7 13/16 13/22
13/25 14/3 18/12 18/18 23/7 23/10
everybody [2] 38/21 48/16
everyone [1] 38/12
everything [3] 22/17 26/13 36/17
evidence [2] 31/18 42/8
exact [1] 8/8
exactly [6] 5/23 9/4 9/6 32/12 42/17 42/24
examination [4] 4/6 30/3 50/5
except [2] 29/6 29/6
excuse [1] 6/19
exhibit [4] 4/1 25/1 25/14 26/3
exhibits [1] 49/4
exist [1] 40/11
exists [1] 8/19
expand [1] 19/18
explain [1] 40/17
explore [2] 20/9 21/5
exploring [1] 21/9
extensive [1] 7/13
extensively [1] 6/22
extent [1] 42/11

# F

faceouts [31] 5/13 6/6 6/16 7/6 8/2 8/6 9/5
9/11 9/17 11/11 11/21 12/3 12/12 12/14
12/16 12/18 12/22 13/12 13/18 13/22 14/4
14/8 15/3 15/23 16/2 16/15 16/22 17/15
17/20 19/1 30/18
fact [1] 43/6
facts [1] 23/23
familiar [1] 5/7
far [2] 22/7 44/17
felt [1] 40/9
FERINGA [6] 1/19 2/8 3/6 30/3 36/15 38/25
few [2] 22/11 33/10
fictitious [1] 1/9
fielded [1] 36/7
file [2] 8/21 10/1
financially [1] 50/17
fine [3] 19/5 21/6 35/15
finish [4] 21/22 28/3 28/6 34/6
finished [1] 11/2
FIONA [27] 1/6 3/4 4/7 5/20 9/23 21/10 22/3
22/5 22/11 22/24 26/14 28/15 29/6 29/25
30/4 32/9 32/14 32/23 33/11 33/23 34/9 37/2
37/3 39/2 45/7 46/14 47/8
first [10] 4/4 7/2 9/1 11/19 16/13 38/3 38/5
42/25 43/5 43/17
floor [3] 12/20 34/20 34/21
Folks [1] 38/9

follow [4] 29/23 33/16 38/6 41/3 41/4
42/20
follow-up [7] 29/7 33/16 38/6 41/3 41/4
42/17 42/20
following [1] 35/17
follows [1] 4/5
foregoing [1] 50/9
form [15] 6/17 11/23 16/10 17/5 17/11 17/24
19/11 19/22 24/12 44/22 46/3 46/6 46/8
47/21 48/12
FORT [2] 1/16 2/4
forth [1] 50/12
foundation [1] 27/19
frame [1] 41/21
front [1] 30/6
FURTHER [2] 50/9 50/13
future [4] 40/24 45/22 46/2 46/24

## G

GAP [20] 1/7 4/22 5/1 5/3 19/25 21/1 22/7
34/23 37/6 37/12 37/17 39/1 39/18 39/20
39/21 41/19 43/7 43/13 44/2 45/9
Gap's [7] 20/12 26/23 27/6 34/23 40/23
41/20 45/18
gave [10] 4/10 12/23 13/10 13/19 14/6
14/13 15/4 16/15 16/23 26/7
general [3] 7/3 9/8 18/2
GEORGE [7] 2/13 19/2 32/22 33/19 35/22
36/14 38/24
get [14] 14/10 22/12 23/22 25/3 25/7 25/9
29/18 29/24 31/24 35/9 35/10 42/20 43/14
44/17
gets [1] 38/5
getting [2] 32/9 41/18
give [6] 7/11 29/12 32/13 33/9 37/1 39/14
given [2] 21/3 31/10
giving [1] 40/24
go [10] 6/24 11/25 21/14 22/20 25/7 25/9
29/13 34/9 40/9 41/6
goes [3] 21/21 22/4 41/15
going [14] 6/24 14/17 21/24 29/2 33/3 33/3
33/6 34/10 34/13 41/3 42/23 45/2 46/13
46/24
gone [3] 6/21 6/22 9/15
good [9] 4/7 4/8 31/8 31/19 35/19 35/21
36/10 38/20 38/22
got [4] 17/14 17/19 18/25 25/12
gotten [7] 19/24 20/16 21/12 21/13 34/22
44/2 44/6
GPSAK [1] 2/14
granted [1] 21/5
GRAZIANO [1] 2/12
grounds [2] 37/20 37/21
Guardian [1] 1/3
guess [1] 26/10

## H

had [22] 5/12 5/19 5/21 5/25 6/2 6/15 7/3
9/7 9/10 9/12 9/14 9/15 9/17 10/10 10/11
12/19 23/12 23/20 24/2 37/11 39/18 42/17
handles [1] 26/24
hang [1] 27/15
happened [2] 9/8 23/5
has [11] 7/11 17/14 18/6 18/25 19/19 20/17
27/19 32/23 43/1 44/23 45/8
hasn't [9] 19/24 20/16 21/12 21/13 34/22
37/16 39/21 44/2 44/5
have [54]
haven't [2] 41/16 47/12
having [4] 10/8 10/9 30/19 34/18
he [4] 23/1 23/22 31/12 36/4
he's [1] 22/25
hear [5] 26/24 39/9 39/14 40/2 42/13

hearing [1] 40/14
held [1] 22/22
help [2] 30/23 31/2
her [100]
here [11] 7/11 20/8 21/7 22/8 25/14 25/23
36/2 39/6 40/11 43/15 46/17
here's [1] 20/24
hereby [1] 50/4
herein [1] 50/12
Hi [2] 36/13 38/12
HIGHPOINTE [1] 1/18
HIGHWAY [1] 2/9
him [6] 23/7 23/11 23/13 23/20 24/17 24/17
hired [1] 9/1
hiring [2] 6/2 6/4
his [1] 24/17
hold [8] 17/6 28/2 28/6 31/22 34/6 36/8
38/10 38/19
Honor [5] 39/16 40/5 40/9 42/16 47/2
Honor's [1] 43/13
hopefully [1] 33/11
how [12] 4/23 5/16 5/18 12/8 14/15 21/9
27/11 27/23 28/11 38/5 41/6 47/22
huh [3] 18/3 37/14 38/17
hypothetical [1] 44/25
hypothetically [1] 42/1

## I

I'd [2] 15/8 29/8
I'll [8] 22/12 25/9 33/10 33/10 35/14 40/17
45/5 46/11
I'm [30] 4/9 8/18 10/8 11/24 15/18 16/12
18/2 18/8 18/11 19/9 19/10 20/21 21/17
21/23 25/19 27/23 28/5 29/22 33/13 33/21
34/10 34/13 42/14 43/14 44/11 45/2 46/4
46/9 47/2 47/11
I've [7] 5/19 7/18 14/8 22/1 22/11 25/12 27/7
IDENT [1] 3/8
identical [1] 41/14
identification [3] 4/2 25/20 26/4
impact [2] 40/12 40/23
implicate [3] 40/18 41/4 43/9
implication [2] 18/18 18/20
improperly [1] 34/14
inaccurate [4] 17/18 18/22 18/23 19/21
Inc [1] 1/8
incident [1] 6/11
indicate [3] 7/12 8/19 47/14
indicated [1] 30/17
Individually [2] 1/4 1/4
infant [1] 1/3
influence [2] 33/3 41/11
information [1] 43/4
initial [2] 6/1 10/11
inquiry [1] 22/4
insinuating [3] 27/24 28/5 28/8
instances [3] 17/9 17/16 19/19
instead [1] 23/23
instructions [1] 4/10
instrument [1] 42/7
intend [1] 45/21
intended [1] 42/8
intention [1] 46/1
interested [1] 50/17
interrupt [1] 6/20
interrupted [2] 7/19 11/1
invoke [2] 18/5 35/5
invoking [1] 18/8
involved [1] 5/14
is [77]
issue [2] 15/16 21/7 32/7 35/12 40/13 40/25
42/7
it [81]
it's [15] 10/1 12/25 17/19 22/2 24/10 24/14

41/23 44/5
itself [1] 43/2

## J

Jenny [2] 27/17 28/25
JERSEY [10] 1/1 1/14 1/16 1/24 2/4 2/14
46/19 47/23 50/4 50/20
job [1] 42/22
judge [26] 17/23 18/6 19/8 21/24 21/24 22/1
22/12 29/14 29/22 32/5 35/10 35/10 35/18
35/19 36/6 36/11 36/17 37/10 38/8 38/13
38/22 41/14 43/11 48/18 48/19 48/22
judge's [3] 20/11 22/5 37/10
juncture [1] 32/21
JUNE [2] 1/16 26/12
June 3rd [1] 26/12
just [24] 6/19 7/6 17/7 22/20 23/23 24/7
27/13 27/15 27/15 27/22 28/2 28/6 33/6
33/23 35/9 38/10 38/14 41/25 43/14 44/11
46/10 46/16 46/18 47/12

## K

keep [1] 22/18
kind [5] 20/17 26/2 29/13 31/22 31/25
knew [2] 27/23 42/21
know [62]
Knowing [1] 31/12
knowledge [1] 43/1
known [2] 4/23 4/24
knows [3] 20/16 21/12 41/20

## L

last [15] 1/9 6/23 7/4 26/17 26/19 27/3
28/21 29/17 29/20 36/6 36/16 36/23 44/12
45/13 45/13
later [2] 9/18 29/10
latitude [1] 7/11
law [3] 2/3 36/11 39/10
lawyer [7] 26/23 34/24 35/2 39/19 44/3
44/21 45/18
lawyers [2] 16/14 44/17
lead [1] 42/8
least [1] 5/21
LEE [2] 1/16 2/4
left [1] 33/15
let [17] 13/13 13/15 14/1 19/18 19/18 20/7
21/15 21/24 25/7 28/2 28/6 29/8 29/9 33/9
34/6 37/1 42/13
Let's [4] 18/23 22/20 24/25 35/9
letter [3] 3/10 14/18 25/1 25/3 26/11 27/8
27/16
level [1] 11/5
License [1] 50/21
lie [2] 18/16 18/17
lied [1] 18/12
life [1] 18/13
like [6] 15/8 19/16 22/17 29/8 31/1 36/19
limited [1] 43/17
LINDBERGH [1] 1/24
line [4] 28/21 30/9 30/11 30/12
lines [1] 30/12
Litem [1] 1/3
little [1] 37/1
logistics [1] 11/6
long [4] 4/23 13/1
longer [1] 6/20
look [6] 24/25 30/9 30/11 34/13 47/15 47/16
looking [3] 30/23 39/11 46/16
looks [1] 31/1
lot [1] 48/17

## M

MACCABEES [1] 2/8
made [6] 17/23 19/6 22/5 27/20 28/9

**M**

mail [15]  14/08 14/20 14/21 14/24 15/6 15/8
 15/14 16/5 16/8 16/11 24/7 24/15 24/18
 24/23 26/25
mailed [1]  24/11
make [9]  13/15 19/4 20/7 22/13 33/10 35/12
 46/7 46/9 49/3
making [1]  17/7
management [2]  11/5 27/18
manager [7]  10/20 10/21 10/24 11/6 37/2
 37/16 39/20
many [3]  5/16 5/18 47/22
mark [2]  25/13 25/22
marked [6]  4/1 25/1 25/19 25/25 26/3 27/16
matter [4]  25/17 36/1 36/6 42/9
may [7]  20/10 21/22 22/10 24/25 40/9 40/18
 46/17
maybe [4]  5/22 20/17 28/10 39/12
me [56]
mean [1]  19/2
meant [2]  28/25 34/9
meet [1]  10/12
message [1]  34/9
messages [3]  34/11 35/12 35/15
messaging [1]  34/15
MI [1]  2/9
MICHIGAN [1]  1/20 39/2
MIDDLESEX [1]  2/14
might [6]  32/5 38/6 41/4 41/5 42/19 42/21
mind [4]  32/3 32/10 32/23 41/21
minutes [2]  33/10 33/12
Miss [19]  6/22 26/7 26/11 30/16 30/19 31/16
 39/25 40/6 40/6 40/10 40/2 43/7 43/18
 43/21 44/1 45/8 45/25 46/22 46/23
misspoke [1]  13/13
moment [1]  36/9
more [3]  14/2 22/11 26/21
morning [1]  4/7 4/8 26/7
MR [2]  3/6 30/3
MS [2]  3/5 4/6
much [7]  21/4 27/11 27/23 28/11 41/4 49/2
 49/5
my [16]  7/4 9/16 11/19 11/24 12/2 12/13
 13/6 28/8 29/12 32/3 34/16 35/14 36/14
 39/10 41/14 46/6

**N**

N-G-A-I [1]  36/5
Nada [12]  10/17 12/21 13/7 13/16 13/25
 14/3 15/3 16/12 16/21 17/9 17/12 18/12
name [1]  24/17
names [2]  24/7 24/8
narrow [2]  39/11 40/24
narrower [1]  41/4
nature [1]  36/25
NAVY [1]  1/14 20/1 20/15 14/7
need [6]  4/12 25/3 25/22 35/5 47/11 48/11
needs [1]  7/18
neither [2]  50/13 50/15
never [1]  17/12
new [28]  1/1 1/14 1/16 1/24 2/4 2/14 19/25
 20/16 21/12 21/13 31/24 34/22 37/11 37/17
 39/18 39/22 41/11 41/18 44/2 44/6 44/20
 45/9 45/21 46/19 47/10 47/23 50/3 50/20
next [3]  9/14 42/4 43/18
NGAI [5]  1/3 1/4 35/25 36/3 41/10
Ngai's [1]  23/5
nice [1]  31/14
night [7]  12/24 13/9 13/23 14/5 15/5 16/16
 16/22
no [44]  1/2 4/13 8/11 8/18 10/14 11/13 12/9
 14/23 15/1 15/10 15/17 17/2 17/6 18/8 18/17
 19/10 19/23 20/7 20/7 21/11 23/3 23/9 23/15
 23/18 25/11 25/15 25/17 26/16 27/18 28/14

33/5 35/4 43/8 46/9 48/11 48/14 50/21
normally [1]  32/15
NORTHWESTERN [1]  2/9
not [56]
Notary [4]  1/14 4/5 50/2 50/20
note [1]  8/22
notes [6]  1/13 8/12 10/2 10/5 10/8 24/4
nothing [1]  50/8
Novoa [2]  27/17 28/25
now [8]  7/18 10/21 10/23 22/4 29/8 29/14
 38/16 45/3
number [2]  3/8 6/20

**O**

object [14]  6/17 11/22 11/23 16/10 17/4
 17/11 17/13 17/24 19/22 44/22 46/3 46/5
 47/21 48/12
objected [1]  37/20
objecting [1]  19/10
objection [17]  17/8 17/19 19/4 19/6 24/12
 33/8 34/25 39/14 40/3 40/4 40/15 43/10
 45/23 46/7 46/10 46/25 47/3
obligation [2]  31/13 31/15
observation [1]  20/8
obviously [2]  33/2 38/7
October [3]  30/5 30/5 31/1
October 20 [1]  30/5
off [2]  22/20 22/22
office [7]  12/17 30/19 34/17 36/14
OFFICER [1]  50/1
offices [2]  1/15 2/3
okay [9]  4/14 5/10 10/15 15/20 16/5 16/20
 18/10 18/23 20/9 22/9 22/15 25/12 26/1 26/9
 27/2 27/8 28/7 29/5 29/22 30/1 30/8 30/10
 32/2 32/16 33/18 33/18 35/6 35/9 35/23 36/1
 36/8 36/18 36/21 36/24 37/19 38/1 38/1 38/13
 39/4 39/8 39/9 39/9 43/19 45/4 47/7 48/15
 48/16 49/6
OLD [4]  1/7 2/10 2/15 14/6
once [1]  4/9
one [21]  5/21 10/11 14/2 20/2 22/21 23/13
 29/7 30/12 30/16 33/14 33/16 33/16 34/1
 36/8 38/3 38/4 38/5 38/8 38/10 45/2 46/21
ones [2]  12/23 13/9 13/19 14/6 14/9 15/4
 16/16 16/23
only [5]  17/25 32/2 33/14 35/2 40/13
order [2]  22/5 40/8
ordered [1]  34/16
originally [1]  14/9
other [10]  5/1 5/24 7/10 9/9 15/21 15/24
 31/6 43/3 46/19 46/19
others [1]  5/22
our [2]  8/24 46/20
out [3]  12/23 32/10 48/6
outside [1]  29/13
over [3]  6/22 29/14 32/25
overrule [1]  43/9

**P**

P.C [1]  2/7
p.m [2]  1/17 49/7
page [3]  16/13 30/8 30/12
pages [2]  26/13
paid [1]  28/11
PALISADE [1]  1/15 2/4
paragraph [1]  28/21
PARKWAY [1]  1/24
part [1]  7/24
participated [1]  27/19
particular [1]  31/15
parties [3]  38/13 41/18 50/15
PATTON [1]  2/7
pay [2]  27/11 28/9
pending [1]  39/25

perhaps [2]  32/15 40/9
permission [2]  32/14 37/11
permitted [1]  30/7
person [4]  5/1 10/12 44/14 44/16
phone [12]  10/11 22/13 32/22 32/24 33/10
 34/11 35/10 35/11 36/12 37/10 38/21 39/17
phrased [1]  41/8
PIASECKI [1]  2/12
pick [2]  14/7 16/8
picked [1]  12/14
picking [1]  12/17
picks [1]  38/14
place [9]  1/18 8/7 8/10 9/19 9/25 28/23
 30/25 31/1 50/12
plaintiff [1]  42/13
Plaintiffs [2]  1/5 2/5
please [16]  7/21 7/22 15/8 15/11 21/22 26/1
 30/8 34/10 35/25 36/9 36/12 38/19 45/4
 46/12 48/2 49/5
point [5]  23/13 31/15 31/17 34/1 35/5
points [1]  7/10
Pomeroy [2]  22/24 24/16
portions [1]  49/4
position [2]  41/7 42/15
possession [2]  19/1 42/7
possible [2]  24/10 24/14
potentially [1]  41/24
pre [1]  40/8
pre-trial [1]  40/8
prefer [2]  32/18 32/20
preparation [2]  13/2 28/12
preparing [2]  27/9 27/12
present [1]  30/6
preservation [1]  30/18
preserve [2]  34/10 35/14
preserved [3]  9/17 12/7 12/8
preserving [1]  35/11
presumes [2]  27/25 28/4
previous [1]  6/21
prior [2]  12/16 50/4
private [2]  21/18 22/6
privilege [19]  17/25 18/5 18/5 18/9 21/19
 35/5 36/22 36/25 37/20 37/21 37/22 37/23
 40/5 40/19 41/5 43/9 43/9 47/4 47/6
privileged [7]  21/2 22/6 42/11 42/11 43/2
 43/3 43/5
probably [8]  5/22 6/12 7/18 7/19 8/21 10/1
 15/7 29/2
proceeding [1]  17/21
professional [1]  5/3
proper [1]  17/21
proposing [1]  42/14
protected [1]  18/1
provide [1]  15/11
PSAK [6]  2/12 2/13 33/13 35/22 36/14 38/24
PSAKLAW.COM [1]  2/14
public [4]  1/14 32/19 50/2 50/20
pulled [7]  12/23 13/18 14/4 14/9 15/4 16/16
 16/22
Purely [1]  5/3
purposes [1]  39/13
put [1]  40/22

**Q**

question [50]  7/4 7/16 13/13 17/7 17/25
 18/14 18/16 19/9 19/11 19/17 22/14 27/2
 28/8 28/10 29/7 29/9 30/17 31/23 33/15 34/1
 34/20 34/21 35/1 35/7 36/23 37/15 39/11
 39/13 39/25 40/7 40/15 40/18 40/21 41/8
 41/9 42/1 42/5 42/10 42/19 43/5 43/6 43/17
 43/18 43/21 43/24 45/1 45/6 46/6 47/25 48/1
questioning [1]  42/14
questions [15]  7/2 7/3 22/11 29/5 29/14
 29/25 30/17 30/21 31/7 36/16 38/2 41/6

questions 2 [3] 44/15 12/17 42/24
quite [1] 31/10

36/13 38/23
ROSEMARIEARNOLD.COM [1] 2/5
rough [1] 13/6

46/6
stands [25] 6/9 6/16 7/6 7/9 8/2 8/4 9/5 9/10
Case 2:11-cv-13050-RSH-PS Document 67 Filed 07/16/09 Page 12/11 12/18 12/24 13/9 13/13 13/18

**R**

rather [1] 42/20
read [8] 7/18 7/22 12/21 13/1 18/16 19/13
 22/1 46/14
reading [2] 16/18 16/24
reads [3] 7/23 19/15 46/15
realize [1] 31/10
really [2] 33/8 38/5
reason [2] 43/6 44/19
reasons [2] 43/1 43/4
REC [1] 3/2
recall [8] 7/24 8/3 14/21 14/24 16/7 17/9
 17/16 19/19
received [7] 4/1 26/3 37/11 37/17 39/18
 45/8 47/23
receiving [1] 43/7
recollection [11] 5/24 6/1 6/14 7/7 8/1 9/4
 9/13 17/4 24/1 30/24 31/3
record [12] 4/17 7/14 19/4 22/21 22/22
 22/23 27/13 27/16 38/15 38/16 39/7 39/13
records [1] 48/8
RED [1] 3/2
referring [2] 16/13 25/19
reflect [1] 8/10
refresh [3] 24/1 30/24 31/2
regard [2] 7/7 11/21
regarding [11] 8/2 12/11 15/22 24/1 24/16
 24/17 24/19 24/21 26/15 29/7 46/7
regards [3] 6/2 16/1 22/13
rehabilitate [2] 31/9 31/17
relative [2] 50/14 50/16
relatively [1] 39/11
remember [30] 6/8 6/11 9/6 9/22 10/9 12/2
 12/25 13/21 14/15 16/4 16/18 16/24 16/25
 19/14 23/15 23/18 23/19 24/7 24/8 26/20
 27/3 27/5 30/20 32/4 44/13 45/13 45/16
 46/18 47/12 47/22
removed [7] 12/3 12/6 12/19 13/8 13/11
 44/6 47/17
removing [1] 8/4
repeat [5] 4/12 13/13 43/23 46/12 48/1
rephrased [1] 28/10
reporter [5] 1/14 39/5 39/9 46/14 50/3
REPORTERS [1] 1/23
reports [1] 26/25
representative [1] 21/1
represented [1] 5/1
representing [1] 5/3
represents [1] 4/22
request [3] 3/9 15/19 26/8
requested [1] 7/23 19/15 46/15
resolved [1] 33/12
respect [7] 4/10 20/9 21/4 22/2 40/10 41/18
 43/13
response [6] 3/9 26/8 26/12 31/23 41/14
 41/20
responsible [1] 28/9
responsive [1] 47/24
review [3] 11/17 13/2 13/5
reviewed [1] 5/9 5/10 44/9
reviewing [1] 26/11
revolve [1] 38/7
right [20] 10/22 22/10 30/2 32/17 33/4 33/15
 34/12 34/19 36/8 37/3 38/3 38/18 40/16
 40/20 41/1 42/3 42/25 43/13 43/20 45/3
Risk [1] 27/18
ROAD [1] 4/3
ROCKLAND [1] 4/4
room [4] 12/18 29/13 32/10 32/20
ROOSEVELT [1] 1/18

**S**

said [18] 8/2 9/4 9/6 12/22 13/12 14/22 16/6
 16/7 17/4 18/21 20/5 24/21 28/16 28/17 29/1
 38/2 42/18 42/23
sales [1] 12/20
same [8] 6/24 13/9 13/19 14/6 14/9 16/23
 17/19 40/11
save [1] 22/17
saved [1] 36/17
say [5] 18/7 18/17 18/21 28/15 33/25
saying [4] 14/19 18/2 18/11 19/3
says [3] 27/8 28/22 38/8
scope [7] 20/3 21/22 22/4 22/8 40/8 41/5
 42/12
SCOTT [15] 1/19 2/8 7/4 15/13 20/6 22/9
 25/5 25/22 28/6 33/11 33/22 34/3 35/11
 36/15 38/25
second [6] 20/2 22/21 28/21 34/12 38/4
 38/10
seconds [1] 32/13
secret [1] 29/11
see [13] 18/6 22/12 27/23 28/21 28/24 30/14
 31/8 31/14 33/7 34/14 42/10 44/10 44/11
send [5] 15/13 20/12 21/1 41/11 46/20
sending [4] 45/16 45/21 46/2 46/24
Senior [1] 27/17
sent [21] 14/18 14/25 15/1 16/8 16/11 24/16
 27/17 34/9 34/11 39/21 44/12 44/17 44/19
 45/11 45/14 46/17 47/9 47/16 47/18 48/4
 48/9
series [1] 30/20
set [1] 50/12
SFERINGA [1] 2/10
she [106]
she'll [2] 38/13 38/14
she's [10] 4/21 4/21 10/21 19/11 26/24 28/9
 36/6 39/6 44/20 44/23
Shorthand [2] 1/13 50/3
should [7] 25/16 25/24 28/10 34/2 34/5
 35/12 43/11
Shwartz [2] 35/18 48/22
Shwartz's [2] 35/19 36/11
sign [1] 29/12
silly [1] 29/14
since [19] 13/1 19/25 27/7 29/17 34/23
 37/12 37/17 39/18 39/22 44/3 44/6 44/20
 45/9 45/12 45/17 47/9 47/23 48/4 48/9
situation [1] 40/11
slightly [2] 41/23 41/25
slippery [1] 43/15
slope [1] 43/15
so [20] 6/12 6/22 14/18 15/7 19/4 19/14
 22/10 24/10 26/2 26/24 29/3 31/13 31/15
 34/19 35/6 39/12 43/9 43/17 46/22 47/11
some [6] 5/1 7/11 20/10 20/17 29/25 40/9
something [10] 17/10 17/17 17/20 18/2
 18/19 19/16 19/17 19/20 33/7 42/6
sorry [6] 4/9 11/1 11/24 21/17 28/17 36/1
SOUTHFIELD [3] 1/20 2/9 39/1
speak [2] 35/25 38/13
speaking [4] 34/12 36/11 46/7 46/10
specific [2] 7/9 8/1
specifically [4] 7/5 9/10 12/25 24/17
spell [1] 36/4
spoke [3] 26/17 26/19 27/4
spoken [5] 9/16 23/7 23/10 27/2 27/7

stenographic [1] 1/12
stenographically [1] 50/11
stick [1] 18/24
still [2] 24/15 26/24
stopped [3] 26/22 27/6 44/3
store [14] 9/15 9/16 10/20 10/21 10/24 11/5
 11/7 12/14 14/17 14/19 22/25 23/2 23/21
 23/22
stored [1] 12/16
strike [4] 10/16 12/12 13/24 26/21
struck [1] 40/14
subject [2] 42/9 43/3
subsidiary [1] 1/7
such [1] 50/16
suggest [1] 29/8
SUITE [1] 1/20
SULLIVAN [1] 2/7
sure [9] 12/22 13/17 16/14 21/8 43/25 44/23
 47/2 47/11 49/3
sustained [3] 45/24 47/1 47/3
SWAPPC.COM [1] 2/10
sworn [2] 4/4 50/7
system [1] 8/24

**T**

T-stand [6] 9/18 12/4 12/14 12/19 16/22
 30/18
T-stands [25] 6/9 6/16 7/6 7/9 8/2 8/4 9/5
 9/10 11/11 12/11 12/16 12/24 13/8 13/11
 13/18 13/23 14/1 14/5 15/3 15/5 15/22 16/1
 16/16 17/15 17/20
take [9] 8/7 8/12 9/19 10/2 10/5 24/4 28/23
 41/24 43/18
taken [3] 1/15 30/5 50/11
TAKING [1] 1/18
talk [4] 11/10 28/7 28/18 32/10
talked [1] 17/12
talking [2] 18/1 33/22
TELECONFERENCE [2] 1/17 1/19
TELEGRAPH [1] 1/20
telephone [3] 32/20 35/17 48/22
tell [20] 4/17 4/19 5/16 5/18 9/3 9/13 9/24
 10/19 13/7 13/16 13/22 13/25 14/3 14/13
 15/25 18/19 20/22 24/10 34/4 39/13
telling [4] 19/8 35/6 44/11 46/22
tells [2] 29/10 35/2
terminated [11] 19/25 37/12 39/19 39/23
 44/20 45/9 45/17 47/10 47/19 48/4 48/9
termination [1] 37/18
Terry [1] 18/16
testified [4] 16/21 37/9 44/8 45/8
testifies [2] 4/5 16/14
testify [1] 50/7
testimony [14] 5/8 7/13 11/18 11/21 12/3
 12/11 21/6 30/9 30/11 31/10 40/10 40/12
 47/8 50/10
text [3] 34/9 34/10 34/15
than [2] 26/21 42/20
thank [11] 21/25 25/8 31/5 35/16 38/1 38/11
 48/18 48/19 48/24 49/2 49/5
thanks [4] 26/9 32/12 48/17 49/3
that [208]
that's [32] 13/20 18/20 19/5 19/9 19/20 20/3

that's [26] 29/18 21/2 21/2 21/6 21/6
21/15 21/18 22/6 26/6 27/22 32/12 33/3 34/2
35/15 37/19 39/23 39/24 40/1 40/24 42/9
42/22 43/8 44/24 47/24 48/7 48/15
their [3] 21/1 39/19 44/3
them [10] 4/12 10/7 12/6 12/6 12/7 12/8
12/17 14/7 16/9 34/13
then [13] 18/6 20/17 22/12 28/6 29/9 33/23
38/6 39/14 39/14 42/23 43/18 47/23 48/15
there [18] 8/4 8/5 8/18 9/9 9/21 9/23 11/1
15/21 23/23 23/25 24/24 30/17 32/24 38/2
38/6 40/15 44/9 47/13
there's [8] 7/12 8/21 15/24 17/6 27/18 39/10
41/3 41/17
THERESA [3] 1/13 1/23 50/2
these [3] 6/21 17/4 41/18
they [3] 9/17 16/1 18/18
thing [1] 6/25
things [2] 19/3 20/22
think [20] 7/8 8/5 9/18 14/15 17/22 17/23
18/1 20/25 25/15 29/11 29/13 31/24 34/2
34/8 41/2 41/13 42/7 44/23 46/17 47/9
this [81]
those [7] 8/15 10/5 12/16 30/19 42/16 42/24
43/4
though [4] 19/14 20/25 23/24 40/7
thought [4] 7/20 11/2 11/3 20/20
three [1] 33/12
through [5] 1/8 1/9 6/24 30/12 30/13
THURSDAY [1] 1/16
TIERNAN [3] 1/13 1/23 50/2
till [1] 36/17
time [18] 9/7 13/1 14/2 18/13 26/17 26/19
27/3 27/9 27/11 31/16 31/17 36/7 37/12 44/3
45/12 45/17 48/23 50/11
title [1] 10/23
TLC102462 [1] 1/25
today [1] 13/3 34/12 38/21
told [18] 9/1 13/8 13/17 13/20 14/1 14/4
14/15 16/21 17/10 17/17 19/16 19/16 23/12
23/14 23/19 32/5 39/10 48/3
too [1] 20/22
took [6] 8/10 9/24 13/23 14/1 30/25 31/1
top [1] 30/12
totals [2] 26/13 26/13
touch [1] 23/22
Tracy [1] 32/3
train [1] 7/20
TRAN [2] 1/3 1/4
transcript [5] 5/10 13/1 13/6 44/9 50/10
transcripts [1] 49/5
trial [1] 40/8
true [4] 27/22 44/5 44/24 50/10
trusting [1] 33/13
truth [7] 17/1 17/3 18/19 18/21 50/7 50/7
50/8
try [1] 14/2
trying [2] 20/8 23/22 46/9
Tuesday [5] 5/5 20/6 37/7 44/8 45/7
turn [1] 30/8
turns [1] 48/6
Tuttle [2] 22/24 24/16
two [8] 1/9 19/3 29/14 33/12 36/16 38/2
38/6 42/20

# U

uh [3] 18/3 37/14 38/17
uh-huh [1] 18/3 37/14 38/17
understand [10] 10/25 11/4 11/4 19/17 20/8
28/22 32/8 33/1 43/11 43/16
understanding [11] 9/17 11/20 11/24 12/2
12/5 12/10 12/13 12/15 14/10 14/14 15/2
understands [1] 46/11

UNION [1] 2/13
UNITED [1] 1/1
unless [1] 45/15
until [2] 22/17 34/12
up [15] 6/12 12/14 12/17 14/7 16/9 22/17
29/7 33/16 34/6 38/6 38/14 41/3 41/4 42/17
42/20
upon [2] 22/5 40/12
us [3] 26/24 29/23 31/24
use [12] 18/15 46/18
usually [1] 10/8

# V

vaguely [2] 16/19 16/25
various [1] 7/9
vein [1] 42/10
very [4] 9/8 40/24 49/2 49/5
via [3] 34/15 34/18 36/15
video [2] 32/18 32/25 34/18 36/15 38/25
views [1] 42/14

# W

W-E-I [1] 36/5
waiver [2] 21/3 41/6 42/9 42/12
WALDWICK [1] 1/24
walking [1] 32/10
want [21] 7/6 7/12 18/5 19/4 19/7 21/5
21/11 22/11 22/16 22/18 25/10 25/13 29/22
32/6 32/24 35/1 38/14 43/10 43/14 44/25
48/1
wanted [3] 27/23 28/18 42/21
WARD [1] 2/7
was [64]
wasn't [3] 12/22 18/19 20/6
way [2] 19/20 41/8
we [33] 8/4 9/7 9/12 16/5 17/23 19/2 19/13
25/1 25/15 27/8 28/22 29/9 29/18 29/24
32/15 32/20 32/21 32/22 34/12 35/5 35/25
36/7 36/14 36/16 36/17 36/19 38/25 40/6
41/16 43/17 46/18 46/20 47/22
we'd [1] 31/25
we'll [5] 15/15 18/6 18/6 33/11 43/18
we're [8] 18/1 26/10 29/2 32/3 38/16 38/24
39/7 46/13
we've [1] 21/3
WEI [4] 1/3 23/5 35/24 36/3
weigh [1] 21/15
welcome [1] 48/20
well [23] 7/1 8/6 17/22 18/15 18/17 19/2
20/5 20/24 21/8 27/25 29/15 29/16 29/23
31/16 32/2 33/14 38/4 41/13 42/16 44/22
46/5 47/15 47/24
went [4] 12/13 14/19 16/8 40/8
were [21] 6/21 6/24 7/3 9/9 11/2 12/16
12/18 12/23 13/9 13/19 14/5 14/8 15/4 16/5
16/15 16/23 33/22 34/14 38/2 41/9 47/16
what [48] 5/7 7/6 8/2 9/4 9/6 9/7 9/24 10/23
11/3 11/18 12/5 12/10 13/5 13/20 14/13 14/21
16/1 16/7 17/1 17/4 17/14 17/23 18/6 18/11
18/25 19/14 20/11 21/20 22/7 23/16 28/25
29/10 31/25 32/5 32/20 33/7 33/10 33/17
34/1 34/4 36/1 37/22 39/13 40/14 41/7 41/20
45/19 46/16
what's [18] 11/20 12/5 12/15 25/19 26/5
34/19 36/24 36/24
when [18] 8/7 8/10 9/19 14/24 15/1 16/8
16/11 22/3 23/1 23/14 26/17 28/25 36/24
38/14 40/6 44/9 44/12 45/13
where [10] 8/23 9/1 12/15 12/22 14/10 17/9
17/16 19/19 39/4 44/16
whether [16] 16/15 18/12 29/20 29/10 32/19
38/8 40/14 41/19 43/1 45/14 47/14
which [9] 8/9 8/19 9/23 9/24 23/25 27/16
32/18 34/16 47/13

WHITELAW [1] 2/12
who [11] 4/14 4/17 4/19 5/1 10/17 10/19
whole [2] 32/6 50/7
why [20] 19/24 20/16 21/11 21/13 23/19
23/18 28/22 31/23 32/3 34/22 37/16 39/21
40/18 42/9 42/23 43/17 44/1 44/19 47/3
will [4] 7/10 27/8 30/8 43/9
WILLIAMS [19] 1/6 3/4 3/9 3/10 4/1 21/10
22/3 22/5 26/3 26/5 27/17 37/2 37/7 39/2
39/25 40/6 43/22 44/1 46/22
WILLIAMS-1 [3] 3/9 4/1 26/5
WILLIAMS-2 [3] 3/10 26/3 27/17
willingness [1] 31/22
withdraw [1] 45/5
within [4] 33/12 41/5 42/9 42/12
without [1] 6/20
witness [15] 1/17 3/2 27/19 31/9 31/17
34/15 34/17 36/15 39/2 39/20 40/22 41/20
43/24 44/23 46/10
witness' [1] 32/1
witnesses [1] 17/4
won't [1] 29/13
wonderful [1] 38/18
word [2] 18/16 29/12
words [1] 18/24
work [9] 21/2 21/12 21/13 31/24 40/24
41/11 41/18 43/7 43/12
would [55] 7/21 8/9 8/19 8/23 9/23 15/11
21/14 23/25 24/15 24/24 26/1 26/11 29/3
31/9 32/1 32/17 32/20 36/19 38/7 40/15 41/3
41/24 43/2 47/11 47/13
wouldn't [1] 32/14
write [2] 10/7 10/8
writing [3] 9/21 9/23 23/25
writings [1] 15/21

# X

XI01210 [1] 50/21

# Y

yeah [13] 16/25 20/4 21/23 21/23 21/23 25/4
25/4 25/4 28/24 33/1 33/9 33/20 47/15
years [1] 4/24
yes [45] 4/16 4/20 5/6 5/9 5/11 5/15 6/5 7/17
7/22 7/25 8/14 8/22 9/2 9/12 9/12 10/1 10/4
10/18 11/16 11/19 13/4 13/14 14/9 15/7
16/19 24/24 25/6 27/7 30/7 30/15 30/22 31/4
33/24 35/8 37/4 37/5 37/25 38/17 41/12 42/2
42/23 43/8 44/18 47/5 48/11
yesterday [4] 20/6 32/3 39/16 40/6
you [233]
you're [12] 18/8 18/20/8 20/25 21/9
32/19 33/6 35/6 39/11 46/16 48/20 48/25
you've [1] 47/9
your [40] 9/3 9/13 11/20 12/5 12/10 12/15
13/3 15/2 15/11 15/18 17/7 18/24 24/1 27/9
30/4 30/23 30/24 31/2 31/22 32/14 33/7
34/11 34/15 34/17 35/2 35/11 39/16 40/5
40/8 41/11 42/14 42/15 42/16 43/13 44/21
46/1 46/24 47/2 47/8 48/8
yourselves [1] 32/11