NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| WEI NGAI, an infant by her Guardian Ad Litem, ENID TRAN, ENID TRAN, Individually, and CHUA NGAI, Individually | : : : : : | |
| Plaintiff | : : | |
| v. | : : : | Civil Action No. 07-5653 (KSH) (PS) |
| OLD NAVY, a subsidiary of GAP, Inc., et al. | : : | OPINION |
| Defendant | : | |

SHWARTZ, Magistrate Judge

    This motion comes before the Court on plaintiffs' application to obtain the non-privileged documents submitted in connection with defense counsel's motion to withdraw.  For the reasons set forth herein, plaintiffs' application is granted in part and denied in part.

I. BACKGROUND

    Plaintiff Wei Ngai injured her eye on a clothing rack at defendant Old Navy's store in Edgewater, New Jersey.  Notice of Removal at Ex. A ¶ 1; Final Pretrial Order ("FPTO"), dated February 25, 2009, Stipulation of Facts at ¶ 15.  On October 16, 2007, plaintiff and her parents filed this action in the New Jersey Superior Court.  Notice of Removal at Ex. A.  Because the parties are citizens of different states and the amount in controversy exceeds $75,000, the defendant removed this action pursuant to 28 U.S.C. § 1332(a)(2).  See Petition of Removal at ¶¶ 2-5.

On June 4, 2009, plaintiffs' counsel deposed the deponent, the General Liability Claims Manager for GAP, via video conference.  Letter of Pro Hac Vice Counsel ("Counsel Letter"), dated June 19, 2009 at 1; Deposition Transcript dated June 4, 2009.   The deposition was convened to question the deponent about the chain of custody of the clothing rack.  Counsel Letter at 1.  Although the Court granted plaintiffs' request that the deposition occur in-person in New Jersey, see Docket Entry No. 59, the deposition was changed to a video conference at the suggestion of plaintiffs' counsel because of the limited number of questions that she planned to ask the deponent.  Counsel Letter at 2.  As a result, the witness remained in Sacramento, California, plaintiffs' counsel and defendant's New Jersey counsel ("NJ counsel") were in Fort Lee, New Jersey, and defendant's Pro Hac Vice ("PHV") counsel participated from Southfield, Michigan.  Id.  Plaintiffs' counsel claims that the deponent and PHV counsel were only visible from the "chest up" and that she was unable to observe PHV counsel's hands during the deposition.  Letter of Plaintiffs' Counsel, dated July 28, 2009 at 1.

The distance between deponent and PHV counsel, however, did not impede counsel's communications with his client.  Counsel Letter at 2.  PHV counsel and the deponent exchanged numerous text messages both before and during the deposition.  Transcript of PHV Counsel's Text Messages ("Messages Transcript").  Before the deposition, PHV counsel and the deponent exchanged eleven text messages.[1]  Messages Transcript.  During the deposition, which

---

[1] The following text messages were sent between PHV counsel and the deponent before the deposition:

| FROM | TO | TIME |
|---|---|---|
| PHV counsel | Deponent | 2:27:25 PM |
| Deponent | PHV counsel | 2:27:44 PM |
| PHV counsel | Deponent | 2:28:13 PM |
| PHV counsel | Deponent | 2:29:06 PM |

commenced at 2:36 p.m. and ended at 3:48 p.m., PHV counsel and the deponent exchanged five messages.[2]  See Deposition Transcript; Messages Transcript.  In addition, PHV counsel accidentally sent a message to plaintiffs' counsel stating "[you] [are] doing fine," which was intended for the deponent.[3]  Id.; Counsel Letter at 2.  Plaintiffs' counsel responded by asking "[you] talking to me or [F]iona?"  Message Transcript.  PHV counsel, realizing his mistake, falsely responded "[m]y son who is coming home from school today[.]"  Id.  Suspecting something might be amiss,[4] plaintiffs' counsel requested that PHV counsel preserve his text

---

| FROM | TO | TIME |
|---|---|---|
| Deponent | PHV counsel | 2:29:06 PM |
| PHV counsel | Deponent | 2:30:03 PM |
| Deponent | PHV counsel | 2:30:18 PM |
| PHV counsel | Deponent | 2:33:05 PM |
| Deponent | PHV counsel | 2:33:24 PM |
| PHV counsel | Deponent | 2:33:51 PM |
| Deponent | PHV counsel | 2:35:16 PM |

[2] The following text messages were sent between PHV counsel and the deponent during the deposition:

| FROM | TO | TIME |
|---|---|---|
| PHV counsel | Deponent | 3:05:26 PM |
| PHV counsel | Deponent | 3:24:18 PM |
| PHV counsel | Deponent | 3:26:30 PM |
| Deponent | PHV counsel | 3:28:38 PM |
| Deponent | PHV counsel | 3:28:54 PM |

[3] The following text messages were sent between PHV counsel and plaintiffs' counsel during the deposition:

| FROM | TO | TIME |
|---|---|---|
| PHV counsel | Plaintiffs' counsel | 3:10:47 PM |
| Plaintiffs' counsel | PHV counsel | 3:12:04 PM |
| PHV counsel | Plaintiffs' counsel | 3:13:00 PM |

[4] Court intervention was sought during the deposition to resolve disputes, but no party mentioned the text messaging issue.  See id. at 35:17-48:21.

messages exchanged during the deposition.[5]  Deposition Transcript at 34:6-18, 35:9-13.

As the deposition continued, more text messages were sent between PHV counsel and the deponent.  See Messages Transcript.  The transcript reveals that PHV counsel sent messages to the deponent at 3:24 p.m. and 3:26 p.m.  Id.  Although PHV counsel asserts that these messages were sent during breaks in the deposition, Counsel Letter at 3, the record suggests otherwise.  The deposition transcript shows only one break was taken but does not reflect the time or duration of the break.[6]  Deposition Transcript at 22:22-23.  Moreover, NJ counsel states that the deponent was visible at all times, spanning from a "short period of time prior to the commencement of the deposition, without interruption, until" the deponent and NJ counsel stepped off camera to speak via telephone.  Letter of New Jersey Counsel, dated July 28, 2009 at 1.

On June 19, 2009, PHV counsel sent a letter to the Court that detailed the events described above, explained that he believed the text messages are protected from disclosure under the attorney-client privilege, provided a transcript of the text messages sent before and during the deposition between the deponent, PHV counsel, and plaintiffs' counsel, and notified the Court of his intention to withdraw from representing the defendant in this case.  Counsel Letter at 1.  On June 22, 2009, defendant filed a motion to permit PHV counsel to withdraw from

---

[5]The next day, plaintiffs' counsel sent PHV counsel a text message reiterating her request that he save all text messages sent during the deposition.  Messages Transcript.  She also requested the deponent's cellular information and that she preserve her text messages.  Id.

[6]The Court notes, however, that plaintiffs' counsel asserts that she overheard PHV counsel suggest an answer to the deponent when returning from a break, which may be different from the break referred to on page 22 of the transcript.  Letter of Plaintiffs' Counsel, dated July 28, 2009 at 1; see also Deposition Transcript at 33:22-23 (reflecting plaintiffs' counsel questioning PHV counsel about this conduct during the deposition).

representing the defendant.  Docket Entry No. 64.  In response, plaintiffs' counsel indicated that she opposed the motion if it would delay the trial and requested production of "any and all documents submitted in support of [PHV counsel's] motion to withdraw as GAP's counsel" that "do not fall within the Attorney-Client Privilege."  Docket Entry No. 65.  In an Order dated June 24, 2009, the Court granted the motion to allow PHV counsel to withdraw as defendant's counsel and ordered that "the defendant shall either produce the attachment to the submission to plaintiffs or submit a letter explaining why the attorney-client privilege over the attachments to the letter should not be pierced."  Docket Entry No. 66.

## II.  SUMMARY OF ARGUMENTS

Defendant argues that the transcript of the text messages should not be produced to plaintiffs because: (1) the communications are protected by the attorney-client privilege and work product rule; (2) the crime fraud exception does not apply because the communications were not in furtherance of a crime; (3) the "at issue" exception does not apply because the communications do not refer to the client's state of mind or any other relevant issue in the case; (4) there is no Rule of Professional Responsibility that compels this discovery; (5) the communications have no effect on the case; and (6) the court rules provide that inadvertent disclosures must be returned to the sender.  Docket Entries Nos. 64, 67.  Defendant also asserts that plaintiffs should be barred from mentioning the text messages at trial.  Docket Entry No. 67.

In response, plaintiffs argue that the documents should be produced because: (1) the documents are not protected under the attorney-client privilege; and (2) the documents fall under the crime-fraud exception or the "at-issue" exception.  Docket Entry No. 65.

## III.  DISCUSSION

      A.      <u>Choice of Law</u>

Because the Court has subject matter jurisdiction over this case based upon diversity, Federal Rule of Evidence 501 directs that the state privilege law of the forum governs.[7] <u>In re Ford Motor Co.</u>, 110 F.3d 954, 965 (3d Cir. 1997) (citing <u>Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.</u>, 32 F.3d 851, 861-62 (3d Cir. 1994)); <u>Fahs Rolston Paving Corp. v. Pennington Properties Development Corp., Inc.</u>, Civ. No. 03-4593, 2006 WL 3827427, *2 (D.N.J. Dec. 28, 2006) (in diversity cases, the law of the forum governs) (citing <u>Maertin v. Armstrong World Ind. Inc.</u>, 172 F.R.D. 143, 147 (D.N.J. 1997)).

      B.      <u>Attorney-Client Privilege</u>

In New Jersey, the attorney-client privilege statute states "communications between lawyer and his client in the course of that relationship and in professional confidence, are privileged, and a client has a privilege (a) to refuse to disclose any such communication, and (b) to prevent his lawyer from disclosing it . . . ." N.J.S.A. 2A:84A-20; <u>see</u> also <u>Fahs Rolston</u>, 2006 WL 3827427 at *3. The purpose of the privilege is to encourage "free and full disclosure of information" between a client and an attorney. <u>Fellerman v. Bradley</u>, 99 N.J. 493, 498 (1985). The privilege promotes attorneys' ethical obligations to keep the confidence of their clients and facilitates counsel's ability to provide the best possible representation. <u>In re Nackson</u>, 114 N.J.

---

[7] Federal Rule of Evidence 501 states:

> in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege . . . shall be determined in accordance with State Law.

Fed. R. Evid. 501.

527, 532 (1989). Courts nonetheless narrowly construe the attorney-client privilege since the "privilege can result in suppression of the truth." Halbach v. Boyman, 369 N.J. Super. 323, 328 (App. Div. 2004) (citing Kinsella v. Kinsella, 150 N.J. 276, 294 (1997)).

The person asserting the privilege bears the burden to prove it applies to any given communication.[8] Horon Holding Corp. v. McKenzie, 341 N.J. Super. 117, 125 (App. Div. 2001); State v. Pavin, 202 N.J. Super. 255, 261 (App. Div. 1985) (noting that "[t]he burden of proof is on the person asserting the privilege to show that the consultation was a professional one"); State v. Blacknall, 335 N.J. Super. 52, 56 (Law Div. 2000). Thus, to be considered privileged, the privilege holder must show that the communication "initially be expressed by an individual in his capacity as a client in conjunction with seeking or receiving legal advice from the attorney in his capacity as such, with the expectation that its content remain confidential." Fellerman, 99 N.J. at 499; N.J.S.A. 2A:84A-20(1); United Jersey Bank v. Wolosoff, 196 N.J. Super. 553, 562 (App. Div. 1984) (noting "the privilege accords the shield of secrecy only with respect to confidential communications made within the context of the strict relation of attorney and client"); In re Kozlov, 156 N.J. Super. 316, 321 (App. Div. 1978), rev'd on other grounds, 79 N.J. 232 (1979) (stating that "[p]roper exercise of the privilege presupposes the existence of all of the prerequisite elements of the attorney-client relationship, namely, that a client has sought legal advice of any kind from a lawyer in his capacity as such and the communication relating to that purpose is made in confidence"). In short, the communication must be between client and counsel for the purpose of securing legal advice and with the expectation the communication

---

[8] The attorney-client privilege "belongs to the client rather than the attorney" and thus only the client can waive the privilege. Fahs Rolston, 2006 WL 3827427 at *3 (citations omitted).

would remain confidential. Thus, disclosure of such communications to or in the presence of third-parties destroys the confidential nature of the communication and therefore such communications are not privileged. See Aysseh v. Lawn, 186 N.J. Super. 218, 222 (Ch. Div. 1982).

      i.      Communications Before the Deposition

The record reflects that there were communications between PHV counsel and the deponent both before and during the deposition. According to the transcript, the deposition commenced at 2:36 p.m. and ended at 3:48 p.m. Thus, the first issue is whether or not the communications between 2:27 p.m. and 2:35 p.m. are privileged. There is no dispute that they are communications between counsel and a client representative exchanged only between them. The content of the communications show that they relate to the then-upcoming deposition. While some of the communications can easily be described as words of encouragement that could have been offered by a non-lawyer, the purpose of the communications are sufficient to protect them. Other communications are the type that a lawyer and client might engage in before a deposition and are properly characterized as furthering the defendant's legal interest.[9] Thus, except as set forth in footnote 9, those communications are protected as well. The communications between the deponent and PHV counsels after the start of the deposition, however, are not privileged.

      ii.      Communications During the Deposition

---

[9] The final text message PHV counsel sent before the deposition commenced, however, may arguably fall within an exception to the privilege. If the parties intend to appeal the decision in this Opinion, the Court will provide supplemental findings concerning the applicability of the exception to this communication and its discoverability.

Despite law to the contrary, defendant seeks to shield communications between PHV counsel and the deponent that occurred during a deposition. Pursuant to Fed. R. Civ. P. 30(c), depositions are to be conducted in the same manner as trial examination. See Plaisted v. Geisinger Medical Center, 210 F.R.D. 527, 535 (M.D. Pa. 2002) (citing Fed. R. Civ. P. 30(c)). To this end, under Rule 30, "counsel should not engage in any conduct during a deposition that would not be allowed in the presence of a judicial officer."[10] Id. at 532 (quoting Fed. R. Civ. P. 30 advisory committee's note). As with trial testimony, discussions between counsel and the witness may not occur because "once a deposition begins, the right to counsel is somewhat tempered by the underlying goal of our discovery rules: getting to the truth."[11] Hall, 150 F.R.D. at 528-9. The goal of obtaining the facts of a case is defeated when the lawyer and not the witness is answering questions or influencing the answers to them. Hall, 150 F.R.D. at 528. Therefore, if an off-the-record conference occurs between the deponent and her counsel about a topic other than to discuss asserting a privilege, then the discussion is not protected by the attorney-client privilege and a "deposing attorney is [] entitled to inquire about the content thereof." Plaisted, 210 F.R.D. at 533, 535 (citing Hall, 150 F.R.D. at 529 n.7, 531-32). Any such

---

[10] Courts have found that attorneys violate Rule 30 in situations where the attorneys have made repeated objections, made objections that suggest answers to deponents, instructed witnesses not to answers questions, and where the attorney and witness left the room while a question was pending. Plaisted, 210 F.R.D. at 535; Hall v. Clifton Precision, 150 F.R.D. 525, 531-32 (E.D. Pa. 1993).

[11] New Jersey state law promotes the same goal. See In re PSE & G Shareholder Litigation, 320 N.J. Super. 112, 116-18 (Ch. Div. 1998) (barring discussions between counsel and witnesses during deposition recesses). Rule 4:13-3 of the New Jersey Rules of Court provides that "[o]nce the deponent has been sworn, there shall be no communication between the deponent and counsel during the course of the deposition while testimony is being taken except with regard to the assertion of a claim of privilege." R. 4:14-3(f).

private conferences concerning the assertion of a privilege or other subject matter should be noted on the record, including the purpose and outcome. Id. at 533 (quoting Hall, 150 F.R.D. at 531-32).

Here, the text messages exchanged between the deponent and PHV counsel were private conversations during a deposition but they are not protected by the attorney-client privilege. First, PHV counsel engaged in conduct that violates Rule 30 by communicating with the deponent after she was sworn for the deposition and throughout the deposition. Because such conduct could not occur at trial and under Rule 30, "counsel should not engage in any conduct during a deposition that would not be allowed in the presence of a judicial officer," see Plaisted, 210 F.R.D. at 532 (quoting Fed. R. Civ. P. 30 advisory committee's note), the conduct here violates Rule 30. Put plainly, PHV counsel passed notes to his client, albeit in an electronic form, while she testified and such behavior would never be permitted at trial. Second, PHV counsel did not place upon the record that he had been communicating with the deponent during the deposition. See Id. at 535. Third, it appears that some of the instructions counsel gave to the deponent were intended to influence the fact finding goal of the deposition process and such conduct would be a proper subject of examination. See Hall, 150 F.R.D. at 528 (explaining that the purpose of depositions is to uncover the truth).

Lastly, the fact that PHV counsel claims the text messages were sent during a break in the deposition does not change the finding that the communications violated Rule 30. First, as set forth herein, it is not clear that any of the messages were sent during breaks. Second, communications between the client and counsel during breaks in an ongoing deposition, other than to discuss a privilege, are not privileged. Plaisted, 210 F.R.D. at 533. When such

interactions occur, courts allow the deposing attorney to question the deponent about the contents of the discussion to determine if any witness-coaching occurred. Id. Third, unlike Plaisted, the plaintiffs' counsel here did not know the private communications were occurring. If it was not for PHV counsel accidentally sending plaintiffs' counsel a text message, plaintiffs' counsel may never have learned of the private discussions. The surreptitious nature of the communication cannot be condoned particularly since they were able to occur only because plaintiffs' counsel agreed as a courtesy to conduct the deposition by video conference. Indeed, plaintiffs' counsel even reminded defense counsel that they should not be "do[ing] anything that's going to influence [the deponent's] answer[s]," Deposition Transcript, at 33:6-8, and she trusted counsel not to engage in such conduct. See id. at 33:13. The Court encourages courteous conduct and acknowledges that courtesy is often extended because there is a level of trust between counsel. The Court cannot condone PHV counsel's conduct for many reasons, not the least of which because it undermines the trust needed for the system to function and it sought to impact the truth finding process.

  C.  Exception to Attorney Client Privilege

Because the communications that occurred during the deposition are not privileged, the Court need not address the arguments concerning whether the exceptions to the attorney-client privilege apply. See, e.g., N.J.S.A. 2A:84A-20(2). The Court, however, notes that even assuming the elements to sustain the attorney-client privilege were present, at least one of these exceptions may require disclosure.[12]

---

[12] The plaintiffs argue that the "at-issue" exception supports disclosure. This exception, however, does not apply. The "at issue" doctrine applies "where a party has asserted a claim or defense that he intends to prove by use of the privileged materials." Pittston Co. v. Allianz Ins.

If the communications during the deposition were privileged, the crime-fraud exception may support disclosure of at least some of the messages. This exception provides that the privilege does not extend to "communication[s] in the course of legal service sought or obtained in aid of the commission of a crime or a fraud." N.J.S.A. 2A:84A-20. New Jersey courts have interpreted the "crime-fraud" exception to encompass not just criminal or tort definition of fraud, but a broader category including "virtually all kinds of deception and deceit, even though they might not otherwise warrant criminal or civil sanctions." Ocean Spray Cranberries, Inc. v. Holt Cargo Sys., Inc., 345 N.J. Super. 515, 521-22, 526-27 (Law Div. 2000) (ordering production of memorandum the client wrote to counsel because it was found that the memo was "rife with documentation of coverup, fraud, deception, fabrication, deceit and false information by [the client] . . . .").[13] The purpose of the exception is to exclude from protection communications that

---

Co., 143 F.R.D. 66, 71 (D.N.J. 1992); North River Ins. v. Philadelphia Reinsurance Corp., 797 F. Supp. 363, 370 (D.N.J. 1992). When these circumstances are present, the attorney-client privilege should yield upon a showing of: (1) a legitimate need to reach the evidence sought to be shielded; (2) relevance and materiality of that evidence to the issue before the Court; and (3) a fair preponderance of the evidence by the party asserting the privilege including all reasonable inferences that the information cannot be obtained from a less intrusive source. Pittston Co., 143 F.R.D. at 71 (citations and quotations omitted). An important factor in this determination is that the party seeking the protection must have injected the communications into the action. Id. Here, there is nothing in the record to show that the defendant intends to offer the contents of the communications to prove its defense. As such, this exception to the attorney-client privilege is inapplicable.

> [13]This broad interpretation of "fraud" has been expressed as follows:
>
>> "Fraud" includes civil as well as criminal fraud. There need not be a tortious fraud in the conventional sense. Rather, public policy requires that the term fraud "be given the broadest interpretation". It includes virtually all kinds of deception and deceit, even though they might not otherwise warrant criminal or civil sanctions. The crime/fraud exception "encompasses a type of communication that is alien to the fundamental reasons that underlie the privilege" because "[t]he privilege is limited to those situations in which

are "alien to the fundamental reasons that underlie the privilege." Fellerman, 99 N.J. at 503.

To pierce the attorney-client privilege using the crime fraud exception, a party must show that "a prudent person [would] have a reasonable basis to suspect perpetration or attempted perpetration of a fraud or crime."[14] Ocean Spray, 345 N.J. Super. at 523. The Court notes, without deciding, that the elements of the crime-fraud exception may provide an alternate ground to support disclosure of certain communications. The Court will examine the applicability of the crime-fraud exception if the parties indicate that they intend to file an appeal of this decision so that the parties and reviewing Court have the benefit of such alternate findings.

---

> lawful legal advice is the object of the relationship." The exception applies even if the attorney is unaware of the client's criminal or fraudulent intent, and applies of course where the attorney knows of the forbidden goal.
>
> The "fraud" exception is interpreted broadly to include, e.g., "[c]onfederating with clients to allow court and [opposing] counsel to labor under a misapprehension as to the true state of affairs . . . " "There is no reason to believe that the use of the word 'fraud' in [N.J.R.E. 504(2)(a)] is to be limited to conventional notions of tortious frauds. Acts constituting fraud are as broad and as varied as the human mind can invent. Deception and deceit in any form universally connote fraud . . . ." In summary, the "fraud" exception is to be given the broadest interpretation.

Ocean Spray, 345 at 521-23 (citations, footnote, and emphasis omitted).

[14]Some New Jersey courts enunciate this standard as making a "prima facie" case in support of the exception using evidence other than the contested communication itself. See, e.g., National Utility Serv., Inc. v. Sunshine Biscuits, Inc., 301 N.J. Super. 610, 618 (App. Div. 1997). The Court of Appeals for the Third Circuit stated that a prima facie showing is made where "the party seeking discovery . . . present[s] evidence which, if believed . . . would be sufficient to support a finding that the elements of the crime-fraud exception were met." Haines v. Liggett Group, Inc., 975 F.2d 81, 95-96 (3d Cir. 1992). Other courts have defined the standard as "a showing of probable cause to believe that a crime or fraud had been committed." Ocean Spray, 345 N.J. Super. at 523.

  D. <u>Defendant's Request to Preclude</u>

  The defendant also requests that the Court preclude the plaintiff from offering any of the facts giving rise to this application or the text messages at trial. Because this is a request for a ruling on the admissibility of evidence at trial, such an application must be directed to the trial judge in the form of an <u>in limine</u> motion. Thus, the Court declines to rule on the defendant's request at this time.

IV. <u>CONCLUSION</u>

  For all of these reasons, plaintiffs' request for production of the non-privileged documents submitted in support of the motion to withdraw is granted in part and denied in part. No later than **August 14, 2009**, the defendant shall produce all text messages from 2:36 p.m. through 3:48 p.m. At this time, the defendant may withhold the text messages from 2:27 p.m. through 2:35 p.m. The defendant's request to preclude offering the communications or referencing PHV counsel's interactions with the deponent shall be presented via <u>in limine</u> motion filed in accordance with Judge Hayden's Order governing <u>in limine</u> motions. An Order consistent with this Opinion will be issued.

                s/Patty Shwartz
                **UNITED STATES MAGISTRATE JUDGE**

DATE:  July 31, 2009